[S. F. No. 540.   Department One.—July 1, 1897.]

## CALIFORNIA CANNERIES COMPANY, RESPONDENT, *v.* LORENZO SCATENA ET AL., APPELLANTS.

SALE—MEMORANDUM—STATUTE OF FRAUDS.—A document reading as follows: "One dollar in hand paid, I sell California Canneries Company, San Jose, one hundred and fifty tons of choice canning peaches. Varieties, Fosters, Mary's Choice, and Salways, at $20 per ton, delivered," across the face of which the seller wrote his signature, is sufficient evidence of a contract of sale, and is a sufficient memorandum to take it out of the statute of frauds.

ID.—SIGNATURE TO MEMORANDUM.—In this state, a memorandum of sale, in order to be a sufficient compliance with the statute of frauds, need not be signed or subscribed at the end thereof. It is sufficient if the party to be charged attaches his signature to it with the intent to accept and be bound by it, no matter to what part of the instrument the signature be attached.

ID.—PARTNERSHIP—SIGNATURE OF ONE PARTNER.—A memorandum of sale by a firm, which is signed by one of the partners in his individual name, with the intention to bind the firm, is, in law, the act of the firm, and binding on all the partners.

ID.—SUBSCRIPTION AT END OF MEMORANDUM.—The signature of a seller, which is written across the face of the memorandum, for want of sufficient place at the bottom of the paper to contain it, will be deemed to have been subscribed at the end of the memorandum, within the meaning of the authorities requiring such a subscription.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. A. A. SANDERSON, Judge.

The facts are stated in the opinion of the court.

*Estee & Miller*, and *J. H. Miller*, for Appellants. ·

*Reinstein & Eisner*, for Respondents.

McFARLAND, J.—Appeals by defendants from the judgment and order denying a new trial.

In the complaint it is averred, substantially, that "on or about the fourth day of August, 1894," plaintiff purchased of the defendants, Lorenzo Scatena and A. P. Giannini, copartners, doing business under the firm name of "L. Scatena & Co.," and said defendants, under said firm name, sold to plaintiff one hundred and fifty tons of peaches of certain named varieties for the price of twenty dollars per ton, delivered to plaintiff; that defendants refused to deliver the peaches, or any of them, although demanded, etc.; and that plaintiff was damaged by said refusal in the sum of fifteen hundred dollars. The answer was a denial of the substantial averments of the complaint. The court found all the issues, except the amount of damages, in favor of plaintiffs; found the damages to be seven hundred and fifty dollars, and gave judgment for the last-named sum. The two main propositions made by appellants for a reversal are: 1. That there was not sufficient evidence to show a sale as averred in the complaint; and 2. That there was not sufficient memorandum in writing to take it out of the statute of frauds.

1. There was sufficient evidence of the sale. The testimony of Henry Jacobs is to the point that a short time before August 4th, he, on behalf of respondent, made a verbal purchase of the peaches from the defendant Lorenzo Scatena, acting for the firm, and then wanted the transaction reduced to writing, but Scatena said it was not necessary. On August 4th Jacobs asked Scatena to give him a writing showing the sale. They were then on the Jackson street wharf in San Francisco, and Jacobs wanted Scatena to go to his store to have the writing made, but the latter said he had not time, and, handing Jacobs a piece of paper, told him to write it quick. Thereupon, Jacobs wrote the instrument intro-

duced by respondent marked "Exhibit 1," and Scatena signed it. It was written on a rough box or desk, used by teamsters to sign their receipts. A photographic copy of the document is in the record, and the body of it is as follows:

"SCOTT'S RANCH, Aug. 4th, '94.

"One dollar in hand paid, I sell California Canneries Company, San Jose, one hundred and fifty tons of choice canning peaches. Varieties: Fosters, Mary's Choice and Salways, at $20 per ton delivered."

After having been written by Jacobs, it was signed by said Scatena. The writing took up the entire side of the paper, leaving no room for a signature, and Scatena wrote the signature across the face of the document. The signature was either "L. Scatena," or "L. Scatena & Co.," some of the testimony being that "& Co." was written at the time, but had become partly or wholly obliterated. But there is no doubt that, according to the great preponderance of the evidence, he thus wrote either "L. Scatena" or "L. Scatena & Co." He was seen writing it, not only by said Jacobs, but by other witnesses. And the transaction was with the firm of L. Scatena & Co., for which he was acting, and for which he had the right to act, and the signature was intended to be, and was, in law, the signature of the firm.

The foregoing evidence was clearly sufficient to warrant the court in finding that there was a sale as averred in the complaint.

2. The signature as above stated was a sufficient compliance with the statute of frauds. The weight of authority and the dictates of reason and justice are to the point that when, after the body of a memorandum has been fully written, a party to be charged deliberately attaches his signature to it with intent to accept and be bound by it, then the statute has been complied with, no matter to what part of the instrument the signature be attached. The words "signed" and "subscribed," although of different derivations, and although their literal

meanings have a shade or two of difference, are substantially, both in common and in law language, the same—except where in a statute, or in connection with a context, some peculiar or additional meaning to either of the words is indicated. In the opinion of this court, *In re Walker*, 110 Cal. 387, the subject is discussed; and the result of the English authorities is thus stated: "To *subscribe* is to attest or give consent, or evidence knowledge, by underwriting usually (but not necessarily) the name of the subscriber. But the place of the writing is immaterial, since a still more general meaning of the word 'subscribe' is to attest by writing, in which definition the locality is wholly disregarded." (See, also, Reed on the Statute of Frauds, sec. 385.) In New York it was held that the signature must be at the end of the memorandum; but that conclusion was reached mainly upon consideration of the fact that there the word "signed" was first used in the statute and afterward changed to "subscribed." No such change has been made here; but, on the other hand, in our statute of wills it is provided that a will "must be subscribed *at the end thereof* by the testator," etc., thus indicating a legislative construction of the word "subscribed" as not necessarily meaning "at the end." Moreover, we agree with counsel for respondents that in the case at bar, under the circumstances described, the signature was substantially at the end of the memorandum, and thus "subscribed" within the meaning of the extreme authorities on the subject. (*Coon* v. *Rigden*, 4 Colo. 275, 282.)

There is nothing in the point that the defendant Giannini was not bound by the memorandum; the act of Scatena was the act of the copartnership. Neither is there anything in the point that there was no sale because appellants did not own or have any interest in the peaches at the time the sale was made. There was no evidence of that fact; and there is certainly no presumption in favor of a seller that he did not own what he sold.

The two pencil marks which are partly through and

partly over the first two lines of the memorandum are sufficiently explained as not intended as erasures.

The judgment and order appealed from are affirmed.

TEMPLE, J., and HENSHAW, J., concurred.