Argued at Pendleton October 26; affirmed November 24, 1936

# COMMERCIAL CREDIT CORPORATION *v.*
# MARDEN ET AL.

(62 P. (2d) 573)

Department 2.

*Carlton L. Pepper,* of The Dalles (Maguire, Shields & Morrison, of Portland, on the brief), for appellant.

*T. Leland Brown,* of The Dalles, and *George H. Brewster,* of Redmond (Brown & Van Vactor, of The Dalles, and George H. Brewster, of Redmond, on the brief), for respondents.

BAILEY, J. This action was brought by Commercial Credit Corporation, a corporation of which the name was formerly Continental Guaranty Corporation, against Victor Marden, Matthew M. Blunt, Mace Fulton and Ed Ball, on a bond alleged to have been executed by them as sureties. The defendants demurred to the complaint on the ground that the action was not instituted within the statutory period and that the complaint did not state facts sufficient to constitute a cause of action against the defendants. From a judgment dismissing the action after the demurrer to the complaint had been sustained the plaintiff prosecutes this appeal.

The complaint alleges that on April 13, 1921, Continental Guaranty Corporation commenced an action in the circuit court of the state of Oregon for Wasco county against Motor Service Company, a corporation, Frank E. Burden and May Burden, to recover from those defendants the sum of $2,236.95 with interest, and attorneys' fees, upon an express contract for the payment of money; that after the filing of the complaint and the issuance of summons a writ of attachment was issued out of the court in which the action was pending, directing the sheriff of Wasco county to attach all property in that county belonging to the defendants or any of them; that the said sheriff, in obedience to the command of the writ, went to the place of business of Motor Service Company, which corporation at that time was operating a retail store at The Dalles, Oregon; and that "for the purpose of preventing the levy of said writ upon said property and for the purpose of indemnifying this plaintiff and said sheriff, the said defendants then and there executed and delivered to said sheriff a certain bond or undertaking in the sum of $2,600.00 in form conditioned to pay any judgment that this plain-

tiff, then called Continental Guaranty Corporation, might obtain in said action, which said bond was in words and figures as follows'':

"In the Circuit Court of the State of Oregon
for Wasco County

Continental Guaranty Corporation,
a corporation,                    Plaintiff,

                    vs.                    BOND

Motor Service Company, a corporation, and Frank E. Burden and Mrs. May Burden,                    Defendants.

"Whereas, the above named plaintiff has commenced an action in the above entitled court against the above named defendants to recover the sum of $2,236.95 with interest thereon from the 24th day of October, 1920, at the rate of six per cent per annum, and for the sum of $345.66 as attorney's fees, and

"Whereas, an attachment has been issued, directed to Levi Chrisman, sheriff of Wasco county, Oregon, directing him to attach all of the property belonging to defendants in said county not exempt from execution or attachment, or so much thereof as will be sufficient to satisfy the claim of plaintiff, and

"Whereas, the defendant Motor Service Company, a corporation, is desirous of preventing the levy of said attachment upon its property, and is desirous of indemnifying the plaintiff and said sheriff, now therefore,

"We, Motor Service Company, a corporation, as principal, and Victor Marden and Matthew M. Blunt, Mace Fulton and Ed Ball in consideration of the premises, and to prevent the levy of said attachment, do hereby jointly and severally undertake in the sum of $2,600.00, being an amount sufficient to satisfy plaintiff's demand, and promise to the effect that if plaintiff shall recover judgment in said action, we will pay to the said plaintiff upon demand the amount of said judgment and costs.

"In witness whereof we have hereunto set our hands and seals this 14th day of April, 1921.

> "Motor Service Company, a corporation.
> By C. E. Blunt, President          (Seal)

------------------------------------------------------------

------------------------------------------------------------

------------------------------------------------------------

------------------------------------------------------------

(Corporate
   Seal)

State of Oregon ⎰
County of Wasco ⎱ ss.

"We, Victor Marden, Matthew M. Blunt, Mace Fulton and Ed Ball, being each duly sworn, say for myself; that I am a resident and freeholder in Wasco county, Oregon, and am not a sheriff, clerk, judge, or any other officer of any court, and am worth the sum of $2,600.00 over and above all my just debts and legal liabilities and exclusive of property exempt from execution.

> "Victor Marden
> Matthew M. Blunt
> Mace Fulton
> Ed Ball.

"Subscribed and sworn to before me this the 19th day of April, 1921.

> "C. D. Butler,
> Notary Public for Oregon

(Seal)    My commission expires Aug. 23, 1922."

The complaint further alleges that the sheriff and the plaintiff in the action then pending in Wasco county "thereupon and thereby accepted the said bond as a good, valid and sufficient bond in lieu of the attachment of said property"; and "that by reason of the execution and delivery of said bond by said defendants and the delivery to and the acceptance thereof by said

sheriff and plaintiff, no attachment of said property was ever made''.

On June 29, 1927, the plaintiff in that action recovered judgment against the defendants therein and each of them in the sum of $3,133.51, with interest, and costs taxed in the sum of $16. Judgment is demanded in the present action against each of the defendants in the sum of $2,600 with interest thereon at the rate of six per cent per annum from June 29, 1927.

■ The bond or undertaking on which this action is based is not a statutory bond. It was not given pursuant to § 4-411, Oregon Code 1930, as a redelivery bond after property had been attached, or pursuant to § 4-417, Oregon Code 1930, for a discharge of attachment. It is in effect, as admitted by both the plaintiff and the defendants, an undertaking to pay any judgment which might be recovered by the plaintiff in the action in which the bond was given, in consideration of the sheriff's refraining from attaching property of the defendants in that action. As such obligation, it is not required to be sealed or to be accompanied by affidavit as to financial qualification of the sureties.

■ It is admitted by both the plaintiff and the defendants that the undertaking here involved is an agreement by the defendants herein to answer for the debt or default of Motor Service Corporation, Frank E. Burden and May Burden, and, as such undertaking, is within the statute of frauds.

The signatures of the defendants herein do not appear in the space provided for them immediately after the body of the bond, but only appended to the affidavit following the bond. It is the defendants' contention that the instrument sued upon was not ''subscribed'' by these defendants as required by § 9-909,

Oregon Code 1930, which section, as far as applicable here, is as follows:

"In the following cases the agreement is void unless the same or some note or memorandum thereof, expressing the consideration, be in writing and subscribed by the party to be charged . . . ; evidence, therefore, of the agreement shall not be received other than the writing . . . ;

*    *    *    *    *

"2. An agreement to answer for the debt, default or miscarriage of another."

The plaintiff takes the position that the word "subscribed" as used in the above statute is synonymous and interchangeable with "signed"; that as long as the signatures of these defendants appear anywhere on the undertaking there is a full compliance with the requirement of the statute of frauds; and that, even if the word "subscribed" be given its literal meaning, the statute is still served by the placing of defendants' signatures at the bottom of the affidavit.

In 1854 the territorial legislative assembly of Oregon enacted a statute of frauds in which it was provided that all agreements, contracts and promises in certain instances should be void unless "such agreement, contract or promise, or some note or memorandum thereof be in writing and *signed* by the party to be charged therewith [italics supplied]": Statutes of Oregon 1854, page 483; Statutes of Oregon 1855, page 527. This statute very closely followed the wording and arrangement of the New York statute of frauds as the same appeared at page 70 of Volume II, 2d Ed., Revised Statutes of New York, published in 1836, with the notable exception that the word "signed" in the Oregon territorial act was substituted for the word "subscribed" appearing in the New York act.

. The statute of frauds enacted in Oregon in 1854 was a part of what was commonly referred to as the code of civil procedure, prepared by James K. Kelly, Reuben P. Boise and Daniel R. Bigelow, commissioners appointed by the legislative assembly of 1853. In the preparation of this code the commissioners, according to James K. Kelly, by common consent agreed to accept the New York code of practice as the basis of the Oregon code, with the exception of its application to proceedings in equity: IV Oregon Historical Quarterly 1855.

In Oregon Statutes published in 1854 and 1855, respectively, there is an explanatory foreword by the public printer reading in part as follows:

"In the side notes in this volume, are added frequent references to the New York reports. They will often be found necessary, and at all times useful, in explaining the text.

"That part of the Oregon statutes relating to the manner of commencing and prosecuting actions at law, are taken, word for word, from the New York Code. * * * We have also incorporated that part of the New York statutes which refers to . . . fraudulent conveyances and contracts."

The English statute of frauds, 29 Car. II, chapter 3, and the early New York statute merely provided that the agreement or some memorandum thereof should be signed by the party to be charged. The case of *James v. Patten,* 6 N. Y. (Selden) 9 (55 Am. Dec. 376), was decided by the court of appeals of New York in December, 1851. In the opinion therein the court compared legislation of the state of New York with the English law, pointed out the change made in the New York law by substituting the word "subscribed" for "signed",

held that the words were not interchangeable, and continued as follows:

"In the revision of the statute of frauds, no motive can be assigned for rejecting a word, the legal meaning of which had been established by a long line of adjudications, and substituting another, which had never received a judicial interpretation, but which had a known limited meaning; unless it was to change the law or the construction of the statute, so as to require an actual signing of the name of the party at the end of the contract or of the memorandum thereof, although in common parlance the word 'signed' in reference to a contract or other instrument in writing is generally understood as a writing of the name at the bottom; yet now, neither in its ordinary or [nor] legal use is it confined to that office; but the word 'subscribed', in its habitual use, and according to both its popular and literary signification, is limited to a signature at the end of a printed or written instrument."

■ It is apparent that the statute of frauds enacted by the territorial assembly in 1854 was adopted from the New York code, with the exception above noted that the word "signed" in the Oregon act was substituted for "subscribed" in the New York statute as it then stood. When the code of civil procedure was adopted in 1862 the Oregon legislature made the statute of frauds in this respect conform to the New York law in force at that time by changing "signed" to "subscribed". The New York act had already been construed to hold that the word "subscribed" was not interchangeable or synonymous with "signed", and by requiring that the agreement or memorandum must be *subscribed* the Oregon legislature must have intended that the signature of the party to be bound should be affixed at the end of the agreement or memorandum.

■ The great weight of authority is to the effect that where the statute of frauds requires the memorandum

to be signed by the party sought to be charged the signature of such party regardless of where it appears on the document constitutes a sufficient *signing,* if it is written for the purpose of giving authenticity to the instrument: 25 R. C. L. 667, § 303. The rule is different, however, where the statute requires that the instrument be *subscribed* by the party sought to be charged: 25 R. C. L. 668, § 303; 27 C. J. 288, § 359; II Williston on Contracts, Rev. Ed., 1684; Tiedeman on Real Property, (3d Ed.) 818, § 571; *James v. Patten,* supra; *American Surety Co. v. Worcester Cycle Mfg. Co.,* 100 Fed. 40; *Boger v. Cedar Cove Lumber Co.,* 165 N. C. 557 (81 S. E. 784, Ann. Cas. 1917D, 116); *Stone v. Marvel,* 45 N. H. 481; *Wild Cat Branch v. Ball,* 45 Ind. 213; *Loughren v. B. F. Bonniwell & Co.,* 125 Iowa 518 (101 N. W. 287, 106 Am. St. Rep. 319).

■ We conclude that, in view of the history of § 9-909, *supra,* the obvious adoption of that law from the New York statute and the construction which had previously been placed upon the word "subscribed" by the courts of that state, the word "subscribed" as used in the Oregon statute is not equivalent to or interchangeable with the word "signed".

In discussing the Oregon statute of frauds, this court in *Masters v. Bidler,* 101 Or. 322, 335 (198 P. 912, 199 P. 920), observed: "The language of our statute is exceedingly drastic; for in express terms it is declared that 'the agreement is void' unless there be a writing, and 'evidence of the agreement shall not be received other than the writing:' " citing *Lueddemann v. Rudolf,* 79 Or. 248 (154 P. 116, 155 P. 172), and *Taggart v. Hunter,* 78 Or. 139 (150 P. 738, 152 P. 871, Ann. Cas. 1918A, 128).

The opinion in *Taggart v. Hunter,* supra, stated that the decisions of other states were of slight value to this

court in construction of the Oregon statute ''by reason of the diverse language used in the statutes'' of those jurisdictions. It was therein further pointed out that the first important difference lies in the fact that the Oregon statute ''declares agreements in the cases mentioned to be void'', and that only eight other states, including New York, have a similar provision.

It is noted in *Lueddemann v. Rudolf*, supra, that the legislature of this state has not only declared that agreements within the purview of the statute of frauds yet failing to meet its requirements are void but ''has gone further and, in words differentiating our law from that of most other states, forbids any other evidence of the contract than the writing itself'' except in those instances in which secondary evidence is permissible.

■ The complaint in the action before us alleges that the bond here involved was executed and delivered to the sheriff of Wasco county for the purpose of preventing an attachment of the property of Motor Service Company, and it is argued here by the plaintiff that the demurrer to the complaint admits, therefore, that this instrument was executed by these defendants. That might be true, were it not for the fact that the bond is pleaded in *haec verba*. We are therefore limited to the bond itself in determining whether or not the same was executed by these defendants.

■■ In an action at law upon an alleged agreement within the statute of frauds it is the sole province of the court to determine from the writing constituting such agreement whether it meets the requirements of the statute, where the law provides, as it does in this state, that the agreement is void unless in writing and subscribed by the party sought to be charged and that no evidence of the agreement shall be received other than the writing itself. It is not for the jury to determine,

under our statute, from evidence other than or in addition to the writing, whether the parties sought to be charged intended by attaching their signatures to a supplemental affidavit to subscribe their names to a bond.

■ In deciding this matter it must be borne in mind that, in order to be binding upon the defendants the statute of frauds requires that the undertaking must have been subscribed by them. The bond concludes with these words: "In witness whereof we have hereunto set our hands and seals this 14th day of April, 1921", followed by the signature of Motor Service Company, with lines for the signatures of these defendants left blank. The affidavit of. qualification signed by these defendants concludes thus: "Subscribed and sworn to before me this 19th day of April, 1921." The affidavit appears to have been signed by the defendants five days after the date on which the bond purports to have been executed. There is no statement in the affidavit itself to the effect that these defendants were sureties on the bond, that they had in fact executed that instrument or that they intended to be bound by its provisions. The qualifying affidavit is not a part of the bond or in any way an essential requirement with reference to the qualification of sureties. From an examination of the bond and the affidavit accompanying it, without other evidence, it can not be said that these defendants subscribed or even intended to subscribe their names to the bond. Inasmuch as the instrument here under consideration was not subscribed by these defendants and the alleged agreement on their part is one within the statute of frauds, we must necessarily hold that such alleged agreement is as to them void.

The facts in this case distinguish it from *Elliott v. Bellevue Gas and Oil Company,* 82 Kan. 78 (107 P.

794); *Craig v. Spencer,* 56 Okl. 259 (156 P. 172); and *Cunningham v. Hawkins,* 163 Mich. 317 (128 N. W. 223). In the first two of these cases the action was based upon an appeal bond, while in the last case action was brought on an ordinary bond. In each of these instances the surety failed to sign immediately at the end of the undertaking, but did sign the affidavit of qualification. In all three cases the affidavit stated that the affiant was surety or one of the sureties upon "the within bond", "the within undertaking" or "the above undertaking". None of the cases had to do with the statute of frauds.

Nor was any one of them decided with reference to a statute requiring signatures to be *subscribed* and precluding evidence of the agreement other than the writing itself.

The court remarked, in *Elliott v. Bellevue Gas & Oil Co.,* supra, that "at least in the absence of a statute requiring the signature to be 'subscribed' to an instrument, it is immaterial to what part of it signers attach their autographs, so long as by such act they signify their consent to be bound by its terms". In *Craig v. Spencer,* supra, the opinion quotes from numerous authorities the conclusion that the place of signature is not material, provided that the name is written with the intention of becoming bound, and further to the effect that parol evidence is admissible to show that signatures were misplaced by mistake.

We have not overlooked the cases of *California Canneries Co. v. Scatena,* 117 Cal. 447 (49 P. 462), and *Myers v. Moore,* 78 Neb. 448 (110 N. W. 989), relied upon by the appellant, to the effect that the words "subscribed" and "signed" are interchangeable. In *Myers v. Moore* the court pointed out that in the Nebraska "statute of frauds, the words 'subscribed' and 'signed'

are used interchangeably as verbal equivalents", and that "the only inference to be drawn from the indiscriminate use of the two words in the statute of frauds is that the word 'subscribed' is not to be taken in its literal meaning, but in its popular sense as the equiv; alent of the word 'signed'. A signature placed at the top or in the body of an instrument, for the purpose of authenticating it, satisfies the statutory requirement that the instrument be signed." This conclusion by the court would permit admission of parol evidence to prove an intention which was not apparent on the face of the writing.

In *California Canneries Co. v. Scatena,* supra, the court in construing the word "subscribed" as used in the California statute of frauds pointed out the fact that the legislature had, in referring to wills, "provided that the will 'must be subscribed at the end thereof by the testator', etc., thus indicating a legislative construction of the word 'subscribed' as not necessarily meaning 'at the end' ".

Our conclusion that the purported undertaking is void as to these defendants obviates the necessity of passing upon the other question presented by the respondents, that is, whether or not the action was instituted within the period provided by the statute of limitations.

The judgment appealed from is affirmed.

BEAN, BELT and RAND, JJ., concur.