## GEIST v. O'CONNOR et al.

### No. 5999.

United States District Court
D. Alaska, Fourth Division. Fairbanks.
Sept. 21, 1950.

agreement with a Mr. Hale to sell him the lot of land in said homestead, which is more particularly described in the plaintiff's complaint herein. Mr. Hale commenced to build a house upon the lot, in March 1940, but was transferred to a different section of Alaska. The Fairbanks Lumber Supply had sold and delivered to him, Mr. Hale, some material for the building of a house on said lot, which material was of the value of $246.80 which Mr. Hale had not paid. Mr. Hale used the supplies from the Fairbanks Lumber Supply Company as a commencement of a house upon said lot. Upon his transfer, he arranged with the Fairbanks Lumber Supply to sell the structure including the materials above mentioned.

The plaintiff, Otto Geist, had a homestead several miles farther from Fairbanks, but he was willing to purchase Mr. Hale's partial structure with a view of moving it to his own homestead. After looking it over more carefully however, he found that the structure, in its then condition, was too weak to be moved unless considerable further work and material were put in on it. He got permission from Pat and Joe O'Connor to put further work and material on his house so that it would stand the stress of moving. In the meantime, Pat O'Connor acting for himself and his brother was attempting to get Mr. Geist to buy the lot and thereby not have to move the house. The power line right of way mentioned herein above was between the Hale structure and the University Road. It took a large, long strip off the lot described in plaintiff's complaint—an average of 52 feet in width for nearly the full 250 foot length of the lot. Pat O'Connor took Geist around the boundaries of said lot and showed him the corner posts which were then in the same position as shown by the survey of plaintiff's lot. Mr. Geist was rather reluctant to purchase the lot by reason of said right of way and other things, but finally he and Pat O'Connor agreed upon $200 as a purchase price of the lot. It was further agreed that Mr. Geist could pay the purchase price in monthly payments of $50 commencing with a payment of September 1, 1940. Mr. Pat

Charles J. Clasby, of Fairbanks, Alaska, for plaintiff.

Warren A. Taylor and Julien A. Hurley, of Fairbanks, Alaska, for defendants.

PRATT, District Judge.

In 1926 J. P. O'Connor executed an instrument in favor of the Fairbanks Exploration Company giving the company a right of way for an electric power line, which right of way was 75 feet on each side of the center line of the power line. The instrument was recorded on the day of execution, to-wit: October 11, 1926. It gave the company a right to use ground 15 feet below the surface and upward therefrom for underground or overhead transmission lines. It further gave the company the right to clear and keep said right of way cleared of trees, brush, etc., but there was no covenant on the part of the company to keep the same clear.

Said right of way was over the homestead of said J. P. O'Connor, a patent for which was issued after his death to his widow and the homestead became known as the Bridget O'Connor Homestead which is in controversy herein.

In the spring of 1940, Pat O'Connor and Joe O'Connor, the sons of J. P. O'Connor and Bridget O'Connor, were the owners of said homestead. They entered into an

O'Connor instructed Mr. Geist to make his checks out to Joe O'Connor.

On or about September 10, 1940, Mr. Geist made out four checks in favor of Joe O'Connor, each for the sum of $50.00. One check was dated September 1, 1940, another October 1, 1940, another November 1, 1940 and the fourth one December 1, 1940. The September check bore the written statement on its face "(1st payment on lot on University Highway)". The October check bore the written statement on its face, "second payment on lot on University Highway)". The November check bore the written statement on·its face, "(3rd payment on lot on University highway)". The December check bore the written statement on its face, "4th and last payment on lot on University highway)".

On or about September 10, 1940, Mr. Geist wrote a letter to accompany the checks in words and figures as follows:

"College, Alaska
September 10, 1940

Mr. Joe O'Connor
Fairbanks, Alaska

My dear Mr. O'Connor:

Enclosed please find four checks made out in your favor, each for the sum of $50.00, or a total of $200.00 to be used as payment in full for the lot on which stands the now unfinished house which I purchased from the Fairbanks Lumber Supply Co., and which was in the process of being built by a Mr. Hale now transferred to Anchorage, Alaska. This lot is located on the University highway on the right side going out—approximately opposite one of the gravel pits.

Since I usually deposit about the second of each month, I would appreciate it very much if you would cash the respective checks not before the third of each month for which they are made out.

When all four checks are cashed by you, I will get a receipt for the amount paid you and, of course, the "deed" for the lot. In the meantime, if you have a print of the plot, giving me exact outlines of the lot, I would appreciate getting one in order that I can go ahead and clean up the brush and

establish fences without overstepping the boundaries.

Thanking you, I am,

Sincerely yours,
/s/ Otto Wm. Geist
Otto Wm. Geist

MB
ENCL:

1 signed personal check for Sept. 1, 1940
1 " " " " Oct. 1, 1940
1 " " " " Nov. 1, 1940
1 " " " " Dec. 1, 1940"

On or about September 10, 1940, Mr. Geist sought out Pat and Joe O'Connor and delivered said checks and letter to them, they being together. Mr. Joe O'Connor stated that inasmuch as Pat had made the deal, the checks should be made out to him, whereupon Mr. Geist crossed out the word "Joe" on each of said checks and wrote above it, "Pat, corrected by OGW" on the checks of September and October, and "corrected by O. W. Geist" on the checks for November and December. The checks were then redelivered to Pat and Joe O'Connor.

At the trial, the letter and the four checks were introduced in evidence, the plaintiff considering them as a written memorandum signed by the party to be charged, to-wit: Pat and Joe O'Connor. Each check bore the endorsement of Pat O'Connor and Joe O'Connor in that order and the checks for October 1 and November 1 further bore the endorsement of "Chas. F. Petersen". Each check bore the bank's "paid" perforation and the date, to-wit: 9-16-40; 10-4-40; 11-4-40; and 12-3-40, of the checks in order of date commencing with the one of September 1, 1940.

Mr. Geist testified that the checks had been paid out of his account in the bank and returned to him. There was no evidence on the part of any of the parties as to whether or not the endorsements on the checks were genuine. Nor was there any evidence on the part of the defendants denying the receipt of said $200 by virtue of said four checks.

In his complaint the plaintiff alleges that said checks and accompanying letter constitute color of title and under which he

had held adverse possession of said lot for more than 7 years.

Mr. Geist testified that the endorsements on the front of the checks as to them being payments on lot on University Highway were written on each check by himself prior to his delivering the checks to Pat and Joe O'Connor. The defendants produced no evidence to the contrary but in their briefs assert that the writing in that regard could have been put on after the check had been cashed and received back by Mr. Geist. The court believes the testimony of Mr. Geist on that subject. Also, the bank's paid perforation on the check of December 1, 1940 cut off a portion of the "t" in the word "payment". That the "t" is cut off is shown by the fact there is no ink around the perforations over the top end of the "t" as there would be if the "t" had been written after the perforation as the pen would have gone into the hole of the perforation and left considerable ink around it.

Mr. Geist's testimony is further corroborated by the following matters:

The O'Connors had sold a number of lots fronting on the University Road for $200.00 but they were smaller than plaintiff's lot. The fact that the power line right of way lying between plaintiff's house and the highway took a strip of land from Mr. Geist's lot 52 feet wide by approximately the length of the lot as shown by the map, defendants' exhibit F, coupled with the fact that the right of way probably would not be kept free of brush and weeds accounts for the larger area of Geist's lot.

The letter of September 10, 1940 by Geist requests Joe O'Connor to cash the checks after the second of each month. The bank's perforations show the checks were cashed as requested.

The fact that Pat O'Connor was the first endorser on each of the checks is some indication he was the payee at the time he endorsed.

That Geist should build a house costing several thousands of dollars on land to which he had no right and without negotiation with the O'Connors, as alleged in defendants amended answer, is inherently illogical. And if he had done so, it surely would have brought about ejectment proceedings.

That plaintiff, through his agent Mrs. Irene H. Anderson, demanded a deed from Margaret Abercrombie and received the promise from her to have a survey made and to execute such deed.

That plaintiff demanded a deed from Jack O'Connor, administrator of the estates of Joe O'Connor and Margaret Abercrombie, through his attorney, E. B. Collins in 1947.

That upon September 13, 1947 Jack O'Connor, administrator of the estate of Joe O'Connor, deceased, executed a deed (plaintiff's exhibit K) to the estate of Margaret Abercrombie deceased conveying an undivided one-half interest in the Bridget O'Connor homestead save and except parcels thereof sold and conveyed on the records "and those parcels conveyed to Hans A. Rhiger and Otto Gist not of record * * *", Otto Gist being Otto Geist the plaintiff.

 The court holds that said checks and letter do not constitute any color of title and do not constitute a sufficient memorandum in writing signed by the persons to be charged to take the contract out of the Statute of Frauds.

 In this respect, attention is called to the fact that the Statute of Frauds of Alaska was taken from that of Oregon, in 1900, and that it provides that the memorandum in writing required must be *subscribed* by the person to be charged. The word "subscribed" means, as used in the Statute of Frauds, a signature of the person to be charged placed immediately at the end of a printed or written instrument. Commercial Credit Corporation v. Marden, 155 Or. 29, 62 P.2d 573, 576, 112 A.L.R. 931.

But even if the O'Connor brothers had subscribed their names to the statement on the face of each check, as to what the payments were for, there would still have been no sufficient written memorandum of the agreement. Nor does the letter of September 10, 1940 which accompanied the checks take the contract between the O'-

Connors and Mr. Geist out of the Statute of Frauds.

■ However, the checks and the letter may be taken with the oral testimony of the plaintiff to show the contract.

■ Although the plaintiff alleged in his complaint that he was the owner of the land in controversy by virtue of having been in adverse possession thereof under color of title for 7 years, evidence was introduced without objection as to matters which would entitle the plaintiff to specific performance of an oral contract to convey land. Such matters may be considered as issues in the case though not pled. Mutual Benefit Ass'n v. Moyer, 9 Cir., 94 F.2d 906; Balabanoff v. Kellog, 9 Cir., 118 F.2d 597; Federal Rules of Civil Procedure, rule 15(b), 28 U.S.C.A. Said Federal Rules became applicable to Alaska upon the 18th day of July, 1949, 28 U.S.C.A. § 2072. The complaint in this case was filed September 29, 1948 and the trial took place upon the 15th day of August, 1950.

The undisputed evidence showed that Mr. Hale had purchased materials for his house in the sum of $246.80, which sum plaintiff Geist paid the lumber company which had furnished the supplies; that the plaintiff Geist between 1940 and 1943 purchased from said lumber company and put into his house on the lot in controversy materials of the value of $1399.83 and that between 1943 and 1948 the plaintiff purchased and put into said house materials costing $457.97, making a total of $2104.60 in materials without counting the cost or value of the labor necessary in the case; that the plaintiff Geist made a full basement for the house and completed the same; that plaintiff spent considerable time clearing his lot of brush and surplus trees and parking the same and that plaintiff or his tenants were in the actual, open, notorious, exclusive possession of said lot claiming to be the equitable owner thereof at all times after the 1st of the year 1941; that Pat O'Connor had visited plaintiff a number of times when plaintiff was in his house on said lot.

The statutes of fraud in Alaska pertaining to this case are as follows:

Section 58-2-2, Alaska Compiled Laws Annotated 1949 (hereinafter referred to as A.C.L.A.). "In the following cases an agreement is void unless the same or some note or memorandum thereof expressing the consideration be in writing and subscribed by the party to be charged or by his lawfully authorized agent: * * * for the sale of real property * * *."

Section 58-2-4, "No estate * * * in real property * * * nor any trust or power concerning such property, can be created * * * otherwise than by operation of law, or by a conveyance or other instrument in writing subscribed by the party creating * * * the same * * * and executed with such formalities as are required by law."

Section 58-2-5, "The last section shall not be construed to affect * * * the power of a court to compel specific performance of an agreement in relation to such property."

In 49 American Jurisprudence, it is stated:

Section 419, page 722, "* * * it is the accepted view that part performance of a parol contract for the sale of real estate has the effect, subject to certain conditions concerning the nature and extent of the acts constituting performance and the right to equitable relief generally, of taking such contract from the operation of the statute of frauds".

Section 428, "The acts of part performance * * * must be referable to and induced by the contract relied upon, and must have been done with a view to its complete performance (16)".

Section 429, "The acts of part performance must themselves be such as to show or imply the existence of some contract between the parties, such as that alleged, before the court will admit parol evidence of the terms of the agreement (4). * * * Although the acts relied upon need not indicate all the terms of the agreement, they must be in conformity with its provisions (6)".

Section 439, "Possession by the purchaser, relied upon as a part performance of a parol contract for the sale of land, must have been delivered by the vendor, or taken by the purchaser in good faith with the knowledge and consent or acquiescence of the vendor (20)". Purcell v. Miner, 4 Wall. 513, 71 U.S. 513, 18 L.Ed. 435.

In Kirby v. Tallmadge, 160 U.S. 379, 384, 16 S.Ct. 349, 351, 40 L.Ed. 463, it is stated, "The law is perfectly well settled, both in England and in this country, * * * that such possession under apparent claim of ownership is notice to purchasers of whatever interest the person actually in possession has in the fee, whether such interest be legal or equitable in its nature, and of all facts which the proposed purchaser might have learned by due inquiry."

In Hughes v. U. S., 4 Wall. 232, 71 U.S. 232, 18 L.Ed. 303, it was held as set forth in syllabus number four, "Open, notorious, and exclusive possession of real property by the parties claiming it is sufficient to put other persons upon inquiry as to the interests, legal or equitable, held by such parties; and if such other persons neglect to make the inquiry, they are not entitled to any greater consideration than if they had made it and had ascertained the actual facts of the case".

In Southwest Pipe Line Co. v. Empire Natural Gas Co., 8 Cir., 33 F.2d 248, 64 A. L.R. 1229, it was held as set forth in syllabus number 10, "Where purchaser has received information or knowledge of facts sufficient to put him on inquiry, he is allowed to rebut prima facie presumption of constructive notice by showing that inquiry failed to reveal conflicting claim, but, on failure to make inquiry or prosecute inquiry with due diligence to the end, presumption of notice is absolute". See also 55 Am.Jur. sections 712, 713, and 716.

In Townsend v. Little, 109 U.S. 504 on page 511, 3 S.Ct. 357, on page 361, 27 L.Ed. 1012, the court said, "Constructive notice is defined to be in its nature no more than evidence of notice, the presumption of which is so violent that the court will not even allow of its being controverted. * * As said by Strong, J., in Meehan v. Williams [48 Pa. 238], what makes inquiry a duty is such a visible state of things as is inconsistent with a perfect right in him who proposes to sell. * * *"

Both Joe and Pat O'Connor had the letter of Geist and the checks (plaintiff's exhibits A, B, C, D and E) before them and were put on inquiry thereby as well as by conversations with Geist and seeing his acts of actual building upon the property, that he intended to take possession of and make the house on the lot his residence and home.

That Pat O'Connor was the duly authorized agent of Joe O'Connor in the sale of said lot was shown by the statement of Joe O'Connor that Pat had made the deal and the checks should be made out to him.

There was no attempt on the part of the defendants in this case to deny the possession of Geist of said lot at any time after the 1st of the year of 1941. Jack O'Connor testified that his brother Pat had made a statement to him in substance and effect that he, Pat, had let Geist in possession of the lot and couldn't get him off. Even this is an admission against the interest of the defendants.

In the case of Sprague v. Jessup, 48 Or. 211, 83 P. 145, 84 P. 802, 4 L.R.A.,N.S., 410, it was held as set forth in syllabus number 3, "Possession of premises by the purchaser, in connection with payment of part of the price and a tender of the balance, is such part performance as to entitle him to a decree for specific performance".

As the laws of Alaska with reference to the Statute of Frauds were, in 1900, taken from the Oregon statutes, the above interpretation of the same laws is very significant.

On June 16, 1943, Pat O'Connor deeded his undivided one-half interest in the O'-Connor Homestead to his sister Margaret Abercrombie. Joe O'Connor died May 26, 1943 willing all of his interest in the O'-Connor Homestead to his sister Margaret Abercrombie. Margaret Abercrombie died in July 1945 willing all of her interest, to-wit, the entire interest in said O'Connor Homestead (except as to lots sold) to her two children, Pat Abercrombie and Mary

M. Achterhoff. Jack O'Connor as administrator of the estates of Joe O'Connor, Pat O'Connor and Margaret Abercrombie was discharged and the estate closed in the order above mentioned as follows: September 1947; shortly after September 1947; and November 1949. The entire title in the O'Connor Homestead (except lots sold) was transferred to the defendants, Warren A. Taylor, Bud F. Meyeres and Gradelle Leigh by deed from Pat Abercrombie and Mary M. Achterhoff of date October 20, 1947.

The defendants, Taylor, Meyeres and Leigh had actual and constructive notice of plaintiff's possession of said lot and his claims with reference thereto. They had this notice before they entered into the agreement of September 26, 1946 (defendants' exhibit number 4) for the purchase of said O'Connor Homestead. Shortly after September 26, 1946 said 3 defendants visited Mr. Geist at his home and saw that he was in the actual possession of the property. They also heard from his own lips the matters claimed by him as alleged in his complaint.

The defendants, Taylor, Meyeres and Leigh did not, in their amended answer, make any pretense of being purchasers in good faith without notice of the claims of plaintiff Geist but contended themselves with denying that there had been any contract on the part of Joe and Pat O'Connor to sell such land to Geist.

In their amended answer, the defendants other than Pat J. Abercrombie and Mary M. Achterhoff, affirmatively plead that plaintiff had agreed with defendants Taylor, Meyeres and Leigh to take a smaller quantity of land than that mentioned in plaintiff's complaint and that he had later refused to carry out his agreement.

No consideration was shown for any such agreement last mentioned. It was denied by Geist and the court believes the testimony of the plaintiff in regard thereto. There is no doubt there was some negotiation between the parties on the subject but there does not appear to have been any meeting of minds on the subject.

Defendants have also plead in their amended answer that no claim for a deed to said lot was ever filed by the plaintiff Geist with the administrator of the estate of Margaret Abercrombie and that the plaintiff is therefore estopped to claim any title to any part of the O'Connor Homestead.

The pertinent provisions of the Alaska law on the last mentioned subject are:

Section 61-13-1, "* * * administrator shall, immediately after his appointment, publish a notice thereof * * * once a week for four successive weeks * * *. Such notice shall require all persons having claims against the estate to present them, with the proper vouchers, within six months from the date of such notice, to the executor or the administrator, at a place within the precinct therein specified."

Section 61-13-2, "* * * A claim not presented within six months after the first publication of the notice is not barred, but it can not be paid until the claims presented within that period have been satisfied, and if the claim be not then due, or if it be contingent, it shall nevertheless be presented as any other claim. Until the administration has been completed a claim against the estate * * * may be presented, allowed, and paid out of any assets then in the hands of the executor or administrator not otherwise appropriated or liable."

Section 61-13-3, "Every claim presented * * * shall be verified * * * to the effect that the amount claimed is justly due; that no payments have been made thereon, except as stated; and that there is no just counter claim to the same * * *. When it appears or is alleged that there is any written evidence of such claim, the same may be demanded by the executor or administrator, or that its nonproduction be accounted for."

Section 61-13-4, "When the claim is presented to the executor or administrator, * * * if he shall be satisfied that the claim thus presented is just, he shall indorse upon it the words 'Examined and approved,' with the date thereof, and sign the same officially, and shall pay such

claim in due course of administration; * * *. If any * * * administrator shall refuse to allow any claim * * * the claimant may present his claim to the commissioner having jurisdiction or to the district court or the judge thereof * * *."

Section 61-13-21, "The charges and claims against the estate which have been presented and allowed, * * * shall be paid in the following order * * *."

■ From the above it is seen that only claims for money due the claimant from the deceased require presentation to the administrator.

In addition to the above results from the reading of the statutes, the same conclusion is reached on other grounds as follows, to-wit:

The Probate Court in Alaska is an inferior court "subject to the supervision of the district judge, in all testamentary and probate matters; * * *." Section 61-1-1, A.C.L.A. Tuppela v. Chichagoff Mining Co., 9 Cir., 267 F. 753.

The jurisdiction of the Probate Court is set forth in section 61-1-1. It does not include any power to act as a Court of Equity.

Upon the death of the owner, the title to real estate descends immediately and vests in the heirs or devisees subject to the right of the administrator to sell the real estate under order of court if such sale is necessary to pay the expenses of administration and the claims against the estate. The sale must be at public sale after considerable notice. 61-18-2 and 61-14-5, A.C.L.A.

Thus the administrator lacks statutory authority to allow a claim for specific performance and to execute a deed to the property sought.

The Probate Court is devoid of statutory authority to try an equitable suit such as the present one.

■ In Moumal v. Walsh, 9 Alaska 656, at page 659, the court stated, "The law plainly declares that it is not necessary to present purely equitable claims to an administrator or to a probate court for allowance, for the reason that neither the administrator nor the probate court can grant equitable relief".

In Brooks v. Yarbrough, 10 Cir., 37 F.2d 527 at page 531 the court said, "With respect to the land, plaintiff seeks relief which is purely equitable, that is, the establishment of a trust and the specific performance of the contract. It is not necessary to present purely equitable claims to an administrator or to a probate court for allowance for the reason that neither the administrator nor the probate court can grant equitable relief."

To the same effect is In re Underwood's Estate, 6 Alaska 673, 680.

Brown v. Town of Sebastopol, 153 Cal. 704, 96 P. 363, 364, 19 L.R.A.,N.S., 178, where the court said in regard to property alleged to have been held in trust by the decedent at the time of his death, "a party seeking such recovery is not asking payment of the claim from the assets of the estate, and is therefore not required to present his claim as a creditor of the estate."

In re Bank's Estate, 80 Mont. 159, 260 P. 128, 131, where it was contended that petitioner's right was barred by his failure to present his claim to the administrator, the court held that "statutes of non-claim deal with such debts and demands as might be enforced by personal action for the recovery of a money judgment."

In Kite v. Eckley, 48 Idaho 454, 282 P. 868, 870 where it was urged that plaintiff could not recover because he failed to file a claim with the administrator, the court held that "inasmuch as this was an action to recover a trust fund, which could not be said to be a part of the estate * * * it was not necessary to file a claim against it."

The original oral agreement between Mr. Geist and Pat O'Connor and Joe O'Connor was that upon his paying for the lot they would execute and deliver to him a deed to the lot. Plaintiff made repeated demands for a deed upon Joe and Pat O'Connor. They repeatedly promised to give him one but failed so to do. Plaintiff, through his agent Mrs. Irene H. Anderson, requested a deed from Margaret Abercrombie after she became the sole owner

of the O'Connor Homestead. She was given the whole story in regard to the sale of said lot and promise to have a survey made and deliver a deed conveying the same to Mr. Geist. None of the said promises were fulfilled.

By reason of the above mentioned promises, plaintiff expended considerable money, time and labor in building his home and beautifying the lot. If he cannot procure a decree of specific performance of said agreement, he will be defrauded of his rights in said lot and home as he cannot get redress from any other source.

The lot was impressed with the equitable rights of the plaintiff. The possession of plaintiff put the defendants Taylor, Meyeres and Leigh upon inquiry and constructively notified them of Mr. Geist's rights in the lot. Pat O'Connor also had actual notice of plaintiff's possession of said lot. The defendants Taylor, Meyeres and Leigh took title to said land charged with the rights of plaintiff. Those defendants are bound to deed said lot to plaintiff in conformity with the agreement between the O'Connor brothers and plaintiff and such a decree may be entered.

Costs are awarded against the defendants Taylor, Meyeres and Leigh, but not against the defendants Jack O'Connor, Pat Abercrombie or Mary M. Achterhoff.

Findings of fact and conclusions of law in accordance with this opinion may be prepared and submitted by the attorney for the plaintiff.