Argued December 6, 1971, affirmed February 24, petition
for rehearing denied March 31, 1972

# FORT HILL LUMBER COMPANY, *Respondent, v.*
# GEORGIA-PACIFIC CORPORATION, *Appellant.*

### 493 P2d 1366

*Norman J. Wiener,* Portland, argued the cause for appellant. With him on the briefs were Miller, Anderson, Nash, Yerke & Wiener, R. Alan Wight and Martin B. Vidgoff, Portland.

*Edward Murphy, Jr.,* Portland, argued the cause for respondent. With him on the brief were Wheelock, Richardson, Niehaus, Baines & Murphy, Portland.

Before O'CONNELL, Chief Justice, and DENECKE, HOLMAN, TONGUE, HOWELL and BRYSON, Justices.

O'CONNELL, C. J.

This is an action by the buyer to recover damages for the breach of an alleged contract for the sale of hemlock logs. Defendant appeals from a judgment entered on a verdict awarding plaintiff $77,000 damages.

There was evidence which would establish the following facts. Defendant's logging manager, Ray Ayers, and plaintiff's log buyer, Ziegler, met on June 1, 1967 to view a stand of timber which defendant planned to log. Plaintiff was interested in purchasing the hemlock logs in the stand. Ayers and Ziegler walked through some but not all parts of the area to be logged. Ayers did not describe or point out specifically which parts of the area were to be logged. Ayers told Ziegler that there was approximately ten million board feet constituting the total volume of all species and that about one half of it, or five million board feet was hemlock. Ayers showed Ziegler a written cruise or estimate indicating the various species and estimated volume of each. Ayers said he would sell the hemlock to plaintiff for $62.50 per thousand board feet and Ziegler said he would take it. Ten days later Ziegler called Ayers and Ayers confirmed the fact that they had a contract for the sale of the hemlock. Ayers asked Ziegler to write him a letter of confirmation for defendant's records. Ziegler sent the following confirmatory letter:

"This is a letter of confirmation of a verbal agreement made with you on June 1, 1967. We will pay you $62.50 per M. net Truck scale for all 3M

and better Hemlock logs. The timber is located in approximately T. 10 S., R. 11 W. and lays generally east of Agate Beach. These logs will be scaled by the Columbia River Log Scaling Bureau at the Fort Hill Scaling Station. Scaling costs will be divided equally between Georgia Pacific Corporation and Fort Hill Lumber Company.

"Payment for the logs will be made within ten days after receipt of a Columbia River Log Scaling Bureau certificate by Fort Hill Lumber Company.

"There is a possibility that a small percentage of the 3 mill logs will prove to be unsatisfactory for manufacture at our mill. If this does prove to be, we would like to request an alternate destination for these logs, with the logs being scaled by the Columbia River Log Scaling Bureau and payment for the logs being made by Fort Hill Lumber Company.

"It is our understanding that this will be a summer logging situation, with the logging being done on dirt roads. The estimated volume is between four and one half to five million feet, and that it will take about two years to log.

"Our desired log lengths are specified on the attached sheet."

Defendant contracted with a third party to do the logging and deliver the hemlock to plaintiff. That contract designated the areas to be logged. The designation was in terms of sections and fractions of sections, and further specification of the area to be logged was made by incorporating into the contract a map showing not only the sections and fractions of sections included but also delineating within the section lines irregular areas colored in green. Finally, the contract specified that the logging was to be "within the cutting lines marked on the ground by Company, hereinafter referred to as 'cutting area.' "

Delivery of approximately one million board feet of hemlock logs was made to plaintiff during the summer of 1967. An additional 200,000 board feet of hemlock were delivered in the summer of 1968. The price of camp run hemlock rose from $62.50 in 1967 to $120-$130 in 1968-1969. On March 13, 1969, defendant informed plaintiff that it did not intend to do more logging and would not continue to supply plaintiff. Plaintiff then brought this action for breach of contract.

■ Defendant first contends that the evidence was not sufficient to establish a contract for the sale of hemlock because there was no agreement as to the quantity or any method of determining the quantity.

We find this contention without merit. Both parties bargained upon the basis of defendant's estimate of the total quantity of timber to be logged and the estimate of the volume of hemlock in that total. The estimates represented an approximation of the number of logs which would be produced from an area the perimeter of which was known to defendant. It is not essential to the formation of a contract that plaintiff also know the exact location of the timber. Defendant agreed to sell and plaintiff agreed to purchase all of the hemlock on the area known to defendant. The fact that the amount of hemlock on that area is not known to either party does not render the contract void for uncertainty. The requisite definiteness exists because the total area to be logged was known (although only to defendant) and it is possible, therefore, to determine the volume of hemlock in the total area.

■ Defendant argues that even if the bargain was sufficiently definite it was in violation of the Statute of Frauds and therefore void. The letter of June 14,

1967 purports to confirm the oral contract of June 1, 1967. If it is a confirmatory letter within the meaning of ORS 72.2010(2) the Statute of Frauds is satisfied.[1]

Defendant argues that the letter does not constitute a "confirmation" of the oral contract because it contains indefinite, inconsistent and additional terms. In support of this contention defendant repeats its argument that the quantity of logs to be sold was not agreed upon. We have disposed of this argument above.

Defendant finds an inconsistency between the reference in the letter to a sale of "all" the hemlock logs and the later reference to a specific amount. It is obvious that the reference to a volume of four and one-half to five million feet was merely an estimate constituting "all" of the hemlock logs in the area known to defendant. We find nothing in the letter which would disqualify it as a confirmation of the oral contract under ORS 72.2010(2).

Defendant contends next that plaintiff's evidence as to damages was speculative. Plaintiff had the burden to prove the difference between the contract price of $62.50 and the market value of camp run hemlock logs during the period delivery should have been made. The jury could reasonably have found that this period was during the summer months of 1969 and 1970 when logging was possible. This was the period upon which plaintiff calculated his damages.

---

[1] ORS 72.2010(2) provides:

"(2) Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within 10 days after it is received."

Mr. Ziegler had kept records of the quality of logs delivered to plaintiff in 1967 and 1968 from the area in question. To establish the market value in 1969 and 1970 for the same quality of logs plaintiff introduced evidence of the price it paid to Crown Zellerbach Co. and Longview Fibre Co. during that period for the same quality of logs. In other words, plaintiff did not purport to use the price of camp run logs delivered to it in 1967 and 1968 by defendant or the market price of camp run logs in 1969 and 1970 as a basis for computing its damages. Plaintiff explained that the reason for not doing so was that there is a wide variation in the quality of camp run logs with a concomitant variation in market value. To arrive at a more refined estimate of the value of the logs plaintiff would have received from defendant if the contract had been performed, plaintiff produced evidence of the actual price paid to Crown Zellerbach and Longview Fibre for each log depending on its grade. Plaintiff having records of the quality of logs received from both defendant and others and the price paid for logs from the latter was able to show more accurately the market price of the logs it failed to receive from defendant in 1969 and 1970.

■ Defendant objected to this evidence on the ground that it did not establish the market value of camp run logs which, defendant argues, is the quality of logs alleged to have been sold by defendant to plaintiff. We do not think that defendant's objection has merit. As plaintiff points out, camp run sales vary widely in quality and therefore in value. Plaintiff, having kept records of the quality of hemlock logs that came from defendant's tract and also records of the price paid for logs of similar quality during the summers of 1969 and 1970, was in a position to establish

more specifically the loss it suffered as a result of defendant's breach of the contract.

■ Plaintiff also relied upon the testimony of Lee Robinson, timber manager for Longview Fibre Co., to establish the market value of logs equivalent in quality to those defendant failed to deliver. Robinson testified that Longview Fibre owned timberland adjacent to defendant's tract. He was asked:

"Q ＊ ＊ ＊ Would a camprun price be equal to a No. 2 sawmill price as far as your knowledge of what you are selling from your adjacent tract of timber?

"A   Well, our experience on the coast, and that is general up and down the coast, is that the average log is approximately a No. 2 saw log."

Using a No. 2 log as the quality equivalent to camp run logs, Robinson gave his estimate of market value for camp run logs in 1969 and 1970 which would come from the Lincoln County area. Defendant attacks various details of Robinson's testimony but we do not think that the criticism undermines the validity of his estimate.

■ Defendant also argues that the damages are excessive because they are predicated upon an amount of undelivered logs which is in excess of the amount to which plaintiff was entitled under the alleged contract. This conclusion is based upon the calculation that the highest quantity of logs contracted to be delivered was five million board feet and that 1.2 million had been delivered in 1967 and 1968, leaving 3.8 million undelivered. It is then argued that multiplying this remainder times the difference between the contract price and the market value of the logs would not come to $77,000, the amount of the verdict.

Plaintiff, on the other hand, contends that the contract did not fix five million board feet as the maximum but that the contract was for all the logs in the designated area. This is our interpretation of the contract. The amount of undelivered timber to which plaintiff was entitled could be determined only by estimating the timber in the area to be logged and then deducting the amount removed. Plaintiff introduced evidence in the form of testimony of a cruiser which, if believed, would establish a sufficient quantity of undelivered timber to support the jury's award of $77,000. Moreover, even using defendant's computation of 3.8 million board feet as the undelivered portion of the logs the verdict would be supported by the evidence if Robinson's estimate of market value is accepted.

We find nothing in defendant's other assertions of error warranting reversal.

The judgment of the trial court is affirmed.