Argued June 10, affirmed September 13, 1977

# WILLAMETTE-WESTERN CORPORATION,
*Appellant,*
*v.*
# LOWRY, *Respondent.*
## (TC 411 604, SC 24494)
### 568 P2d 1339

John Spencer Stewart, Portland, argued the cause for appellant. With him on the briefs were Elizabeth Yeats and Kobin & Meyer, Portland.

Dennis H. Elliott, Portland, argued the cause for respondent. With him on the brief were Donald W. Green, III, and O'Connell, Goyak & Haugh, Portland.

Before Howell, Presiding Justice, and Lent, Linde and Campbell, Justices.

CAMPBELL, J., Pro Tempore.

**CAMPBELL, J., Pro Tempore.**

The plaintiff filed this action seeking to recover damages caused by the defendant's refusal to sell the plaintiff a used Drott 1500 Cruz Crane with a 61-foot Power Boom pursuant to an alleged rental-purchase agreement entered into between the parties on June 26, 1972. Although Edward J. Lowry is named as defendant both as an individual and as Ed Lowry Construction Co., we will refer to defendant as Lowry.

In 1971 Lowry purchased the crane in question for approximately $65,000, intending to use it in connection with two United States Forest Service projects. When these projects did not materialize, Lowry placed the crane for rent.

During early 1972, plaintiff, Willamette-Western, had several large construction projects in progress and had a specific long-term need for a Drott crane. Jack Kaady, who was primarily responsible for procuring construction equipment for the plaintiff, contacted several equipment suppliers in the Portland area. One of the suppliers Kaady contacted was Case Power & Equipment Company, whose representative, Roy McKenney, had sold the Drott crane to the defendant.

The evidence concerning the negotiations and agreement for the rental of the crane with an option to purchase was in dispute, but the jury could have found the following:

The negotiations were conducted solely by telephone with Kaady representing the plaintiff and McKenney representing the defendant. Lowry was in McKenney's office during the telephone conference. During the telephone conversation Kaady told McKenney that Willamette-Western wanted an option to purchase the crane at any time during the rental term. Lowry objected to an any time option and wanted to limit the option to a six-month period. The inference is that McKenney relayed Lowry's objection to Kaady.

[ 527 ]

On June 26, 1972, Kaady prepared, signed, and forwarded to Lowry a completed "Rental Agreement" form which described the crane and set out the details of the lease arrangement. The agreement form was designated as Order No. R.A. 0110. It contained the following provision, in which the blanks had been filled in by typewriter:

"OPTION TO PURCHASE: WILLAMETTE-WESTERN CORPORATION HAS THE OPTION TO PURCHASE AT __Anytime__ WHILE RENTED TO WILLAMETTE FOR THE PURCHASE OPTION PRICE OF $ 64,381.50 WITH TERMS TO APPLY AS FOLLOWS:
__89__ % OF ALL RENTALS TO APPLY TO THE PURCHASE PRICE WITH INTEREST FIGURED AT __0__ %."

Kaady had signed the form on behalf of Willamette-Western. Provision was made for the lessor's signature as follows:

"COMPLETE AGREEMENT: This rental agreement and any attachments hereto constitute the entire agreement superseding all prior proposals and agreements between the parties, and any changes hereto must be in writing and signed by both parties.

"LESSOR: by _____ "

Lowry received the rental order from Kaady and read it but did not sign it. On June 28, 1972, he prepared, signed and sent to plaintiff an invoice for $1,500 for the first month's rent for the crane. The invoice contained the following notation:

"Your Order RA 0110
"* * * * *

"Agreement 6-26-72
"* * * * *."

The plaintiff took possession of the crane and started making the rental payments of $1,500 per month.

In November 1972, Lowry called Kaady "to find out what they was going to do with the crane after the six months was up." Kaady told Lowry that he did not

have time to talk to him. Kaady was going out of town and when he got back he would contact Lowry and they "would have lunch and discuss it." Kaady did not contact Lowry.

There was no further contact between the plaintiff and the defendant except for the monthly invoices and rental checks until the summer of 1974. Each month the defendant sent to the plaintiff an invoice identical, except as to date, to the first one. The checks sent by the plaintiff in payment of the invoices were designated for the "rental" of the crane until August 1974 when the designation was changed to "rental purchase payment."

In the summer of 1974 the plaintiff asserted that it had an option to purchase the crane under the rental order of June 26, 1972. The defendant responded that there was no option. Negotiations failed and the complaint in this case was filed.

The plaintiff's amended complaint alleged that the parties, on June 26, 1972, entered into a lease-purchase agreement relative to one used Drott 1500 Cruz Crane (the rental order of June 26, 1972, was attached as an exhibit), that the plaintiff exercised its option to purchase the equipment, that the defendant refused to proceed with the sale, and that the plaintiff had been damaged in a specified sum. The defendant filed an answer in the form of a general denial. The jury returned a verdict in favor of defendant, and plaintiff appeals.

■ Plaintiff, at trial, raised by a motion for a directed verdict and by various requested jury instructions the contention that the rental order of June 26 and the invoice of June 28, taken together, constituted as a matter of law a contract under which plaintiff was entitled to exercise its option to purchase the crane at any time during the term of the lease. The trial court, however, submitted the issue of liability to the jury, which found for defendant. By sundry assignments of

[ 529 ]

error, plaintiff raises the same issue on appeal: whether there was any evidence which would permit the jury to find for defendant on the issue of liability. We hold that there was.

There was evidence from which the jury could find that the parties made an agreement during the telephone conversation between Kaady and McKenney, and that their agreement did not include an option to purchase at "any time" during the term of the lease, but only during the first six months. If the jury so found, it could also find that the later exchange of documents—the rental order and the initial invoice—did not accomplish a modification of the original oral contract. Although plaintiff clearly inserted the "any time" option term in the rental order form, defendant never signed that document. Defendant's invoice did not refer directly to that provision or expressly indicate acceptance. Although reference on the invoice was made to plaintiff's "Order RA 0110," the jury was not bound to find that reference necessarily constituted agreement to a proposed modification of the prior oral agreement. The body of the invoice, which was a billing for the first month's rental in the agreed-upon amount, was entirely consistent with defendant's version of that prior agreement.

There was, then, a question of fact for the jury on the issue of liability, and the trial court did not err in refusing to direct a verdict for plaintiff, or in refusing to instruct the jury that the two documents which we have described, taken together, themselves constituted the contract between the parties.

Plaintiff contends, however, that even if this is true under the general law of contracts, defendant nevertheless became bound under certain provisions of the Uniform Commercial Code. The provisions upon which plaintiff relies are ORS 72.2010 (UCC 2-201) and ORS 72.2070 (UCC 2-207).

■ These provisions apply to contracts for the sale of goods.[1] The parties disagree as to whether this transaction, which is basically a lease but which included an option to purchase, is a contract for the sale of goods for the purpose of applying these statutes. Without so deciding, we will assume, for purposes of this opinion, that it is. We will also assume, without deciding, that both parties are "merchants" for the purposes of ORS 72.2010(2) and ORS 72.2070(2), both of which are set out and discussed below.[2] Even with the benefit of these assumptions, plaintiff was not entitled to a ruling that defendant was liable as a matter of law.

■ ORS 72.2010 is the Uniform Commercial Code's Statute of Frauds. The portions upon which plaintiff relies are:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable * * * unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought * * *.

"(2) Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within 10 days after it is received."

We may agree that plaintiff's rental order of June 26 was a sufficient writing to satisfy this statute, and that, as between merchants, it would also suffice against a lessor who had read it but not signed it if no notice of objection was given within ten days. That does not, however, mean that defendant was bound by

---

[1] See ORS 72.1060(1).

[2] A merchant, for purposes of the issues involved in this case, is defined as:

"* * * a person who * * * by his occupation holds himself out as having knowledge or skill peculiar to the practices * * * involved in the transaction * * *." ORS 72.1040(1).

See also, Comment 2 to UCC 2-104.

the terms of the order as a matter of law. Comment 3 to UCC 2-201 reads:

> "Between merchants failure to answer to a written confirmation of a contract within ten days of its receipt is tantamount to a writing under Subsection (2) and is sufficient against both parties under Subsection (1). *The only effect, however, is to take away from the party who fails to answer the defense of the Statute of Frauds; the burden of persuading the trier of fact that a contract was in fact made orally prior to the written confirmation is unaffected.*" (Emphasis added.)

Defendant has not attempted to raise the Statute of Frauds as a defense in this case. Plaintiff's reliance on ORS 72.2010(2) is misplaced. See also, 2 Williston on Sales 287, § 14-8 (Statute of Frauds) (4th ed Squillante & Fonseca 1974).

■ More to the point is plaintiff's argument based on ORS 72.2070, which provides, in relevant part:

> "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
>
> "(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
>
> "* * * * *
>
> "(b) They materially alter it; or
>
> "(c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.
>
> "* * * * *."

Although we have assumed, for present purposes, that this transaction is governed by the statute, and that both parties are merchants so as to make subsection (2) applicable, nevertheless plaintiff would not be entitled to a ruling that defendant became bound to the "any time" option provision as a matter of law.

If the jury found, as we have already said it was entitled to do, that the parties orally agreed to a lease with a six-month option provision, the specification of an "any time" option in plaintiff's rental order would be a term "different from those * * * agreed upon * * *." If subsection (2) of that statute applies to "different" terms as well as to "additional" terms, still defendant would not become bound by this provision upon failing to object to it if it materially altered the original agreement. ORS 72.2070(2)(b). A jury could find (if, indeed, it would not be bound to find) the substitution of the "any time" option for a six-month option was a material alteration of the original agreement.

We hold, then, that under either general contract principles or the provisions of the Uniform Commercial Code upon which plaintiff relies, the terms of the option (and, therefore, defendant's liability) was a question for the jury.

Plaintiff assigns as error the trial court's failure to sustain its objection during the following exchange:

"Q [By Mr. Green] What was your understanding, Mr. Lowry, of the option that you may have had with the plaintiff?

"MR. STEWART: Objection, Your Honor; irrelevant.

"THE COURT: You mean the option contained in the document?

"MR. GREEN: Yes.

"THE COURT: He can testify as to that. The document that was sent to him, you are talking about?

"MR. GREEN: Yes.

"THE WITNESS: Could you say that again, please?

"BY MR. GREEN:

"Q What was your understanding of the option that was contained in the contract?

"A Well, my understanding of the option?

"Q Yes, that you had with Willamette-Western.

"A The only part of it that I can understand is the

[ 533 ]

six months that we originally talked about. The anytime figure and the rest wasn't discussed by me at all."

The plaintiff contends that the question to Lowry seeks to elicit "undisclosed intentions" of the defendant which had not been "communicated to the plaintiff."[3]

Assuming that the plaintiff's objection was sufficient to call that contention to the trial court's attention,[4] Mr. Lowry's answer, which was not responsive to the question, was not inadmissible on that ground. Mr. Lowry did not testify as to his "undisclosed intentions," but referred only to the six-month option provision which, according to him, "we originally talked about." In effect, his answer tended to vary the terms of plaintiff's written order. Since the trial court had ruled that the parol evidence rule applied to exclude such evidence, a motion to strike the answer might have been granted. No such motion was made, however.

■ In summary, if the trial court erred in overruling the objection to the question, that error was harmless because the question was not answered responsively. If the answer was objectionable on another ground because of the trial court's prior rulings, that objection was not made. Admission of Mr. Lowry's testimony was not reversible error.

■ The trial court refused to give three of plaintiff's requested instructions having to do with practical construction and course of performance. Assuming that the requested instructions accurately stated the law, they would have been abstract in this case. Before the dispute which led to this lawsuit arose, the parties' performance under the lease did not indicate which option provision they had agreed upon.

---

[3] We have recently discussed the circumstances under which a party may testify concerning his mental state during oral contract negotiations. *Kabil Developments Corp. v. Mignot,* 279 Or 151, 566 P2d 505 (1977).

[4] *See, e.g., U.S. Nat. Bank v. Guiss,* 214 Or 563, 592, 331 P2d 865 (1958), and cases there cited.

Finally, plaintiff assigns as error the trial court's rulings permitting both Lowry and McKenney to testify that McKenney was authorized to rent the crane for Lowry. There are two prongs to plaintiff's argument that this testimony was inadmissible. First, it is contended that the testimony was irrelevant because plaintiff had pleaded and proved that the contract of the parties was contained in the parties' writings: plaintiff's rental order and defendant's invoice. We have already dealt with this argument.

Second, plaintiff contends that this evidence was inadmissible because there was no showing that Kaady knew of any agency relationship between Lowry and McKenney. This argument misses the mark.

There was nothing in the evidence to indicate that Kaady believed, or had reason to believe, that McKenney was acting on his own account when he negotiated with Kaady. Under the circumstances, if McKenney purported to enter an agreement for rental of the crane, it must have been on Lowry's behalf. If he was actually authorized to act for Lowry, it is immaterial whether Kaady knew or did not know that authority. 2 Restatement (Second) of Agency § 292 (1958), provides:

> "The other party to a contract made by an agent for a disclosed or partially disclosed principal, acting within his authority, * * * is liable to the principal as if he had contracted directly with the principal * * *."

Comment *a* makes it clear that the third party is bound whether or not he has been informed about the agent's authority:

> "* * * If the agent is authorized to make a contract, the other party is bound upon it although, at the time of entering into the contract, he does not believe that the agent is authorized to make it. * * *"

Admission of this testimony was not error.

In summary, then, there was evidence to support the jury's verdict, and the alleged errors in the

proceedings at trial do not require reversal. Plaintiff's other assignments of error have to do with damages and need not be considered.

The judgment of the trial court is affirmed.