579 P.2d 655 (1978)
NATIONS ENTERPRISES, INC., a California Corporation, Plaintiff-Appellee,
v.
PROCESS EQUIPMENT CO., a California Corporation, Defendant-Appellant.
No. 76-803.
Colorado Court of Appeals, Div. 3.
February 16, 1978.
Rehearing Denied March 23, 1978.
Certiorari Denied May 22, 1978.
*656 Robert G. Cale, Colorado Springs, for plaintiff-appellee.
Casey, Klene, Horan & Wegs, David R. Reitsema, Denver, for defendant-appellant.
KELLY, Judge.
Process Equipment Company, Inc., appeals a final judgment contending the court erred in denying its motion to dismiss for lack of personal jurisdiction and in finding it liable for damages for breach of contract after finding that the buyer's purchase order constituted the terms of a contract which was breached by Process. We agree with the latter point and reverse. We affirm the judgment in favor of Process on its counterclaim for the price of the goods delivered.
Nations Enterprises, Inc., a California corporation, sued Process, also a California corporation, in El Paso County District Court, alleging that Process had breached a contract entered into about June 2, 1972, to supply pumps which were to be used by Nations on a government installation. Pursuant to the long arm statute, §§ 13-1-124 and 13-1-125, C.R.S.1973, Process was served with a copy of the summons and complaint in California.
Process answered, denying the breach of contract claim, and also denying it was doing business in Colorado. The answer also pleaded the court's lack of jurisdiction over the subject matter, stated that "the defendant had no contacts with the State of Colorado in this matter," and included a counterclaim for the amount due on the pumps delivered.

I.
Nations argues that, pursuant to C.R.C.P. 12(b) and 12(h), Process waived any defense *657 based on lack of in personam jurisdiction since it did not move to quash service and since it did not raise the issue in its answer. Nations does not argue that Process submitted to the jurisdiction of the court by filing its counterclaim, and we therefore do not address this question. We agree, however, that the defense of lack of in personam jurisdiction was waived, but not for the reasons suggested.
Process' answer denied that it was doing business in Colorado and raised as an affirmative defense lack of minimum contacts with Colorado. Although this defense was labeled as an attack on subject matter jurisdiction, the specific allegations were sufficient to raise the issue of lack of in personam jurisdiction. See C.R.C.P. 8(f). Indeed, absent the label, these assertions can raise no other question than that of in personam jurisdiction.
A party may, however, by its actions, waive the court's lack of in personam jurisdiction. See Clinic Masters v. District Court, Colo., 556 P.2d 473 (1976); Board of County Commissioners v. District Court, 172 Colo. 311, 472 P.2d 128 (1970). And, once jurisdiction over the person is raised as an issue, it must be preserved and brought to the attention of the trial court at a reasonable time, especially when, as here, it is raised by responsive pleading as opposed to motion. This is particularly so where the pleading raising the issue lacks specificity.
Here, the first written motion specifically attacking the court's personal jurisdiction over Process was made more than one year after service of the summons, after the pretrial conference, and less than two months before trial. Since Process, even at the time of the pretrial conference, was still treating the issue as one of subject matter jurisdiction,[1] and since, by its conduct, it had demonstrated its submission to the jurisdiction of the court, the defense of lack of in personam jurisdiction was waived. See Alger v. Hayes, 452 F.2d 841 (8th Cir. 1972). Consequently, the trial court did not err in ruling that it had personal jurisdiction over Process.

II.
Process admits that it entered into a contract with Nations. However, it argues that it fulfilled its contractual obligations and that the trial court's finding of breach resulted from its erroneous determination that Nations' purchase order constituted the terms of the contract. We agree.
Process, in response to a request from Nations, made two letter proposals to supply some of the pumps required on the projectone in February and another in April 1972. Two months later, on June 2, 1972, agents of the parties met for further discussions, at which time Process was furnished with the project specifications. Bell, Process' agent, testified that this June 1972 meeting was the first time he was made aware of the shock specifications which required the pumps outlined in the proposals to withstand accelerations of up to 13 times the force of gravity. Immediately after this meeting, Process contacted its pump supplier to ascertain the shock specifications of the pumps outlined in the proposals.
Following the June meeting, Nations sent a purchase order to Process for some of the pumps quoted in the February and April letters. Paragraph 18 of the "Conditions" on the reverse side of the purchase order provided:
"Execute acceptance (blue) and return within ten (10) days after receipt of same. No payment, either partial or final, will be made until the acceptance copy has been executed and returned."
The acceptance copy referred to in paragraph 18 of the purchase order contained the following notation:
"NOTE: THIS ORDER IS NOT VALID UNTIL ACCEPTANCE COPY SHOWING SHIPPING DATE IS RECEIVED BY THIS OFFICE."
Process did not execute and return the acceptance copy to Nations. On behalf of *658 Process, Bell testified that the acceptance copy was not returned because the pumps could not be certified to meet the stringent shock requirements.
After receiving the purchase order, Process submitted data to the U.S. Army Corps of Engineers, which determined that the pumps Process proposed to supply were not acceptable. After continuing negotiations, the shock requirement was reduced from 13 g. to 3 g. By the end of July 1973, nine pumps which were certified as meeting the reduced shock requirement had been shipped to Nations at the construction site. The remaining pumps described in the purchase order were not certified to meet the shock requirement and were not supplied by Process.
Ordinarily, an offer to make a contract invites acceptance in any manner reasonable in the circumstances. Section 4-2-206, C.R.S.1973. However, here, Nations' purchase order provided for an acceptance in writing, and the acceptance copy pointed out that the order was not valid until the acceptance copy was received by it. Nations' purchase order did not invite acceptance by partial performance, and the trial court erred in finding that Process' conduct in shipping some of the pumps more than a year after the date of the purchase order amounted to acceptance. Section 4-2-206, C.R.S.1973. See Antonucci v. Stevens Dodge, Inc., 73 Misc.2d 173, 340 N.Y.S.2d 979 (1973).
Alternatively, Nations argues that, if its purchase order was not accepted by Process' partial performance, then, under the circumstances, its purchase order was an acceptance of an offer made by Process to supply pumps. We do not agree. Process' April letter, which contained a proposal to supply pumps, recognized that further negotiations were necessary between the parties. See Euclid Engineering Corp. v. Illinois Power Co., 79 Ill.App.2d 145, 223 N.E.2d 409 (1966). Fairly read, the letters sent by Process to Nations were preliminary negotiations soliciting an offer from Nations. See Interstate Industries v. Barclay Industries, Inc., 540 F.2d 868 (7th Cir. 1976); Cannavino & Shea, Inc. v. Water Works Supply Corp., 361 Mass. 363, 280 N.E.2d 147 (1972).
Nations also argues that its purchase order is at least a confirmatory memorandum within the meaning of § 4-2-201(2), C.R.S.1973, which is sufficient to bind Process since written objection to its contents was not received within ten days. This argument presumes that the parties had entered into an oral contract before the purchase order was received by Process. However, the burden is on Nations to prove that an oral contract had been entered into before the purchase order was drawn. Section 4-2-201, C.R.S.1973 (Official Comment 3). The record is devoid of any evidence in support of such a contention. Moreover, to constitute a sufficient writing to take the oral contract outside the statute of frauds, the writing must be "in confirmation of the contract." Here, the purchase order does not confirm that a contract had been made. See Alice v. Robett Manufacturing Co., 328 F.Supp. 1377 (N.D.Ga.1970); aff'd, 445 F.2d 316 (5th Cir. 1970); Arcuri v. Weiss, 198 Pa.Super. 506, 184 A.2d 24 (1962). Rather, the purchase order, on its face, recognizes that something more must be done before a contract could come into existence. The trial court erred in finding that Nations' purchase order constituted the terms of the contract, and we therefore reverse the judgment in favor of Nations on its breach of contract claim.
However, it is undisputed, and the trial court found, that nine pumps were shipped to Nations. From this finding, the trial court correctly ruled that Process was entitled to the purchase price for the pumps delivered, and thus judgment on the counterclaim was properly entered.
The continuing negotiations between the parties, the pump supplier, and the Corps of Engineers regarding the shock specifications and the efforts to have them reduced, which culminated in the shipment of the acceptable pumps, is conduct which shows that the parties intended to enter into a contract for the sale of pumps which were *659 acceptable to the Corps of Engineers. See § 4-2-204, C.R.S.1973. Thus, since the pumps which were acceptable were shipped to Nations and accepted by it, the contract for their sale, although not in writing, is enforceable, and Process is entitled to the purchase price. See § 4-2-201(3)(c) and § 4-2-709, C.R.S.1973.
Accordingly, that portion of the judgment in favor of Nations on its breach of contract claim for damages and attorneys fees is reversed. That portion of the judgment in favor of Process on its counterclaim is affirmed, and the cause is remanded with directions to enter judgment in favor of Process on its counterclaim, together with interest at the legal rate from the 14th day of July, 1976.
RULAND and VAN CISE, JJ., concur.
NOTES
[1] Process now concedes that the district court had subject matter jurisdiction and thus subject matter jurisdiction is not an issue in this appeal.