Argued and submitted November 3, 1995, decision of the Court of Appeals and
judgment of the circuit court affirmed April 11, reconsideration denied
June 18, 1996

## GPL TREATMENT, LTD.,
a corporation;
Scott Cedar Products,
a division of Green River Log Sales, Ltd.,
a corporation;
and Blackhawk Forest Products, Ltd.,
a corporation,
*Respondents on Review,*

*v.*

## LOUISIANA-PACIFIC CORPORATION,
a Delaware corporation,
*Petitioner on Review.*

(CC 9209-06143; CA A81171; SC S42285)

914 P2d 682

John F. Neupert, of Miller, Nash, Wiener, Hager & Carlsen, Portland, argued the cause for petitioner on review. With him on the briefs was William H. Walters.

Jay W. Beattie, of Lindsay, Hart, Neil & Weigler, Portland, argued the cause and filed the briefs for respondents on review.

VAN HOOMISSEN, J.

Fadeley, J., concurred and filed an opinion.

Graber, J., filed a dissenting opinion in which Carson, C. J., and Gillette, J., joined.

## VAN HOOMISSEN, J.

This case involves the so-called "merchant's exception" to the statute of frauds in the Oregon Uniform Commercial Code (UCC). ORS 72.2010(2).[1] Plaintiffs (GPL)[2] sued defendant Louisiana-Pacific (L-P) seeking damages for breach of an alleged oral contract to buy 88 truckloads of cedar shakes. L-P denied the alleged contract and asserted the UCC statute of frauds, ORS 72.2010(1), as an affirmative defense. GPL relied on the merchant's exception. ORS 72.2010(2). The trial court denied L-P's motions *in limine* to exclude evidence of the "writing" that GPL sent to L-P and for a directed verdict concerning GPL's alleged noncompliance with ORS 72.2010(1). After a jury verdict for GPL, the trial court entered judgment for GPL. The Court of Appeals affirmed. *GPL Treatment, Ltd. v. Louisiana-Pacific Corp.*, 133 Or App 633, 894 P2d 470 (1995). For the reasons that follow, we also affirm.

■ On appeal from the denial of L-P's motion for a directed verdict based on GPL's alleged noncompliance with the UCC statute of frauds, the court reviews for errors of law, accepting all facts and inferences in the light most favorable to GPL.[3]

---

[1] ORS 72.2010 provides in part:

"(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by the authorized agent or broker of the party. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.

"(2) Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within 10 days after it is received."

ORS 72.2010 is a verbatim codification of UCC § 2-201(1) and (2).

[2] Although plaintiffs, GPL Treatment, Ltd., Scott Cedar Products, and Blackhawk Forest Products, Ltd., are separate companies, their legal arguments are identical. In this opinion, we refer to them collectively as GPL.

[3] The statute of frauds is a substantive rule of contract law that promotes commercial certainty by allowing contracting parties to rely on the ultimate written expression of their agreement as embodying the terms of their agreement. *Onita Pacific Corp. v. Trustees of Bronson*, 315 Or 149, 162, 843 P2d 890 (1992).

The GPL companies manufacture and sell cedar shakes. L-P has bought shakes from all three GPL companies in the past. The parties are "merchants" within the meaning of ORS 72.2010(2). *See* ORS 72.1040(1) (defining "merchant").[4] In the spring of 1992, Feaver, GPL's sales representative, met with Cunnally, a shake trader for L-P. In May 1992, Feaver and Cunnally reached an oral agreement for L-P to buy a large quantity of cedar shakes from GPL. Feaver filled out and signed six of GPL's four-part order confirmation forms. Each form stated the prices and quantities of product being sold to L-P. Feaver sent L-P the top two copies of each of the six four-part order confirmation forms.

Because of the nature of this case, it is necessary to describe GPL's order confirmation form in detail. It contains four pages, each of which bears the words "ORDER CONFIRMATION" in the upper right hand corner. Pages one and two of the form are sent to a customer who places an order with GPL. The text at the bottom of pages one and two is different. The relevant text at the bottom of page one reads:

"CONDITIONS OF SALES:                    GPL LTD.

"All orders accepted subject to
strikes, labor troubles, car
shortages or other contingencies
beyond our power to control.
Any freight rate increases,
sales, or use taxes is for buyers
account.

"SIGN CONFIRMATION COPY AND RETURN        BY:_____
                                              THANK YOU"

Page two does not contain the "Conditions of Sales" wording or the "sign-and-return" clause found on page one. Instead, the relevant text at the bottom of page two reads:

"ORDER ACCEPTED BY:_____        GPL LTD.
                   FIRM NAME

_____        BY:_____
"SIGNATURE & TITLE          DATE             THANK YOU"

----

[4] L-P does not dispute that it received the writings that GPL contends satisfy the merchant's exception or that the writings were received within a reasonable time. Nor does L-P argue that it did not have reason to know the contents of the writings.

Thereafter, the price of shakes dropped and L-P's needs for shakes changed. Feaver and Cunnally continued to negotiate. In June or early July 1992, GPL's Clarke also negotiated with Cunnally about the same matters. After talking with Cunnally, Clarke wrote a new order, revising the prices and quantities of product being sold to L-P. Clarke then telephoned GPL's employee, Sherneck, and told him to send written confirmations of the new orders to L-P. Sherneck did so, using GPL's order confirmation forms, which he signed. Each form stated the prices and quantities of product being sold to L-P. L-P did not give written notice of objection within 10 days.

In July 1992, L-P accepted delivery of 13 truckloads of shakes from GPL. When L-P did not request delivery of the remainder of the order, GPL became concerned and contacted L-P, asserting that it had a contract to deliver 75 *additional* truckloads of shakes. L-P responded that it had agreed to purchase only the 13 truckloads that it had already received. The GPL companies then brought this action to recover their respective profit losses on the alleged agreement to sell L-P 88 truckloads of shakes. In addition to denying GPL's claim, L-P asserted as an affirmative defense that GPL's claims were barred by ORS 72.2010(1), the UCC statute of frauds.

Before trial, L-P moved *in limine* to prevent GPL from introducing its order confirmation forms into evidence, arguing that, as a matter of law, they did not satisfy the merchant's exception to the UCC statute of frauds, because, L-P asserted, GPL's forms required L-P to sign and return a copy indicating L-P's acceptance of GPL's offer.[5] Thus, L-P argued, by instructing L-P to sign and return the confirmation copy on the "order accepted by" line, GPL indicated its intention that the contract is to become final only after L-P's approval

---

[5] The UCC included the merchant's exception to the statute of frauds to correct a pre-Code invitation to fraud. Under prior law, if one party sent a confirmation of an oral sale of goods to the other party, the sender was bound to the contract, but the receiver was not. If the seller sent the confirmation, and then the market price of the goods fell, the statute of frauds was no bar to the buyer denying the oral agreement. *See* Henry J. Bailey III, 1 *The Oregon Uniform Commercial Code* § 2.18 (2d ed 1990) (explaining rationale for the merchant's exception).

of the quoted terms. The trial court denied L-P's motion holding, as a matter of law, that GPL's order confirmation forms were sufficient confirmations of an oral agreement to satisfy ORS 72.2010(2). At the close of GPL's case, L-P moved for a directed verdict, again arguing that GPL's order confirmation forms did not satisfy the merchant's exception. The trial court also denied that motion. A jury later found that L-P had breached an oral contract to buy 88 truckloads of shakes from GPL. L-P appealed.

The Court of Appeals affirmed. *GPL Treatment, Ltd.*, 133 Or App at 642. Judge Leeson dissented, concluding that GPL's order confirmation forms unambiguously required L-P to sign and return page two, acknowledging that the orders were "accepted." Therefore, according to the dissent, GPL's writings were merely offers to L-P to enter into a contract that did not satisfy the merchant's exception. *Id.* at 646. We allowed L-P's petition for review.

L-P contends that the Court of Appeals erred in affirming the trial court's ruling denying its motions *in limine* and for a directed verdict on the ground that the alleged oral contract for the sale of shakes fails to comply with the statute of frauds. L-P argues that, as a matter of law, GPL's order confirmation forms do not satisfy the merchant's exception, because they require a signed acceptance by L-P. L-P further argues that the Court of Appeals' decision is contrary to case law from other jurisdictions that have adopted the UCC. *See* ORS 71.1020(2)(c) (one of the purposes of the Oregon UCC is "[t]o make uniform the law among the various jurisdictions"). GPL responds that the rule advocated by L-P is inconsistent with the official commentary and existing case law interpreting the relevant UCC provisions, and that adoption of the rule advocated by L-P would offend settled contract law and contradict the stated policy of the UCC. The question thus presented is: When a merchant seller sends to a merchant buyer a writing labeled "ORDER CONFIRMATION" that contains a "sign and return" clause, does the writing constitute a "writing in confirmation of the contract and sufficient against the sender" under ORS 72.2010(2)?

Whether a writing in confirmation of an oral contract satisfies the statute of frauds is an issue of law for the court.

*See Can-Key Industries, Inc. v. Industrial Leasing Corp.*, 286 Or 173, 183-84, 593 P2d 1125 (1979) (determination of whether UCC provision applies, given undisputed facts, was a question of law); *Commercial Credit Corp. v. Marden*, 155 Or 29, 39-40, 62 P2d 573 (1936) (same rule before adoption of UCC). In contrast, questions about whether a party received the writing, whether it was received within a reasonable time, whether the receiver had reason to know its contents, sent objections, or the like, are questions of fact. *See* Ronald A. Anderson, 2 *Uniform Commercial Code*, § 2-201:146 (3rd ed 1982 and Supp 1995).

■ The statute of frauds is generally considered to be an affirmative defense, which must be specially pleaded. The party raising the statute of frauds defense also has the burden of proving it. If the defense fails because of the merchant's exception, the proponent of the oral contract still has the burden of proving that in fact a contract was made before the proponent issued the written confirmations. *See Willamette-Western Corp. v. Lowry*, 279 Or 525, 531-32, 568 P2d 1339 (1977) (the proponent of the contract has the burden of persuading the trier of fact that in fact an oral contract was made before the written confirmation); *Tripp v. Pay'n Pak Stores, Inc.*, 268 Or 1, 7, 518 P2d 1298 (1974) (so stating under statute of frauds applicable to the sale of investment securities).

■ To avoid a statute of frauds defense under ORS 72.2010(1), there must be some writing sufficient to indicate that a contract for sale has been made between the parties. The writing must be signed by the party against whom enforcement is sought, state a quantity, and evidence a contract for the sale of goods. UCC § 2-201 official comment 1 (1993); *see Roboserve, Ltd. v. Tom's Foods, Inc.*, 940 F2d 1441, 1448, (11th Cir 1991) (so stating in applying Georgia statute). Similarly, under the merchant's exception, ORS 72.2010(2), a writing in confirmation of the contract must be signed by the sender, state a quantity, and evidence a contract for the sale of goods. *See* William D. Hawkland 2 *UCC Series* § 2-201:05 (1992 and Supp 1994); Anderson, 2 *Uniform Commercial Code* § 2-201:128-188; White and Summers, 1 *Uniform Commercial Code* § 2-5 (4th ed 1995). A written confirmation sent

pursuant to the merchant's exception need not contain all material terms of a contract; it must simply confirm a contract and include a quantity term. *See, e.g., Fort Hill Lumber v. Georgia-Pacific,* 261 Or 431, 493 P2d 1366 (1972) (buyer's letter confirming parties' oral contract to buy and sell logs satisfied ORS 72.2010(2)). UCC § 2-201, official comment 1 (1993); *see Security Bank v. Chiapuzio,* 304 Or 438, 445 n 6, 747 P2d 335 (1987) (in adopting the UCC, the Oregon legislature took note of the official comments, which are statements of purpose).[6]

A merchant who receives a confirmatory writing complying with the requirements of ORS 72.2010(2) may escape being bound only by giving written objection to the contents of the writing within 10 days after receipt. Silence by the receiver does not affect a valid confirmation. A determination that a writing satisfies the merchant's exception does not prove the existence of a contract, however. It merely prevents the party against whom enforcement is sought from raising the UCC statute of frauds as an affirmative defense.

In construing ORS 72.2010(2), this court's task is to discern the intent of the legislature. This court looks first to the text and context of the statute. *PGE v. Bureau of Labor and Industries,* 317 Or 606, 611, 859 P2d 1143 (1993). The relevant phrase of ORS 72.2010(2) is "a writing in confirmation of the contract and sufficient against the seller." ORS 72.2010(2) provides no further information about what specific words, forms, or writings suffice as a "writing in confirmation of the contract" *and,* in addition, show that a writing is "sufficient against the sender." We proceed to examine the context of the statute.

ORS 71.1020 provides in part:

"(1) The Uniform Commercial Code shall be liberally construed and applied to promote its underlying purposes and policies.

---

[6] For analysis and citations to cases supporting the above principals, *see* Randy R. Koenders, Annotation, *Sales: Construction of Statute of Frauds Exception Under UCC § 2-201(2) For Confirmatory Writing Between Merchants,* 82 ALR 4th 709 (1990 and 1994 Supp). *See generally,* Comment, *The Merchant's Exception To The Uniform Commercial Code's Statute of Frauds,* 32 Vill L Rev 133 (1987).

"(2)   Underlying purposes and policies of the Uniform Commercial Code are:

"(a)   To simplify, clarify and modernize the law governing commercial transactions;

"(b)   To permit the continued expansion of commercial practices through custom, usage and agreement of the parties;

"(c)   To make uniform the law among the various jurisdictions."

In examining the context of the statute, we also look to the decisions of other jurisdictions that have considered the merchant's exception. *See Security Bank*, 304 Or at 445 n 6 (recognizing that decisions of other courts that have examined these questions are relevant).

The cases cited by the parties, however, do not supply any bright-line rule that a writing with a "sign confirmation copy and return" clause on one page followed by an "ORDER ACCEPTED BY" clause on the next page either do or do not satisfy the merchant's exception in any given case. The outcome in any given case depends primarily on an evaluation of the specific writing at hand.

For example, L-P relies on *Great Western Sugar Co. v. Lone Star Donut Co.*, 567 F Supp 340 (ND Tex 1983) *aff'd* 721 F2d 510 (5th Cir 1983). In that case, Great Western Sugar (GWS), the seller, brought an action against Lone Star, the buyer, for breach of an alleged oral contract. GWS had sent Lone Star a letter in "confirmation" of the alleged agreement and Lone Star had not objected within 10 days. The GWS letter concluded as follows:

" 'This letter is a written confirmation of our agreement * * *. Please sign and return to me the enclosed counterpart of this letter *signalling your acceptance of the above agreement.' " Id.* at 341 (emphasis added).

It was undisputed that Lone Star did not sign the letter in confirmation. At issue was whether that letter satisfied the merchant's exception. The trial court held that GWS "unambiguously indicated, by the language concluding the letter agreement, the manner and medium of acceptance: the buyer was to sign and return a copy." *Id.* at 343. Consequently, the

court concluded that, at best, the letter was an offer and not a "writing in confirmation" of a prior oral agreement:

> "A true confirmation requires no response. Having presented Lone Star with a renewed opportunity to weigh the benefits of a bargain and escape it, GWS cannot rely on the 1981 letter agreement to satisfy the requirements of the statute of frauds." *Id.* at 342.

The Fifth Circuit affirmed "[f]or the reasons stated in the careful opinion of the trial court." 721 F2d at 510.

On the other hand, GPL relies on *Bazak Intern. v. Mast Industries*, 73 NY2d 113, 535 NE2d 633 (1989). That case held that annotated purchase order forms signed by the buyer, sent to the seller and retained without objection, fell within the merchant's exception, satisfying the statutory requirement of a writing even without the seller's signature. Bazak, the buyer, and Mast, the seller, had reached an oral agreement for Bazak to buy textiles from Mast. Bazak sent purchase orders to Mast. *Id.* at 634. Those orders, describing the quantities and prices of the goods to be purchased from Mast, all contained the notation, "[a]s presented by [Mast's representative]." Printed on the orders were the words: "This is only an offer and not a contract unless accepted in writing by the seller, and subject to prior sale." *Id.* at 635. There were two signature lines: one for Bazak and one labeled "customer's acceptance" for Mast. The line for Bazak was signed, but the customer acceptance line for Mast was not signed. Mast argued that the writing did not satisfy the merchant's exception to the statute of frauds, because it stated "this is only an offer and not a contract unless accepted in writing by the seller and subject to prior sale," and Mast had not signed on the customer acceptance line.

In rejecting Mast's argument, a majority of the New York Court of Appeals stated:

> "While an express disclaimer generally would suffice to disqualify a memorandum as confirmatory of an oral agreement * * *, it is plain from the face of these documents that the printed matter was entirely irrelevant to the dealings between these parties. The forms themselves bespeak their purpose: to record a sale by Bazak as seller, not a purchase

by Bazak as buyer. The language regarding claims, allowances and returns are clearly all referable to a transaction in which Bazak was the seller, as is the signature line for Bazak. Read literally, these forms would not even have allowed for Mast's signature; the line for 'CUSTOMERS ACCEPTANCE' is obviously inapplicable — Bazak, not Mast, was the customer. In short, though Mast is free to argue at trial that different inferences should be drawn, the forms indicate that Bazak simply used its seller's documents to record its confirmation of the alleged contract, and that the small print at the bottom of the page was no part of that communication." *Id.* at 638.

Although *Bazak* may stand for the proposition that the existence of a "customer acceptance" signature line that has not been signed does not automatically prevent a writing from satisfying the merchant's exception, we do not find that it offers compelling support to GPL here, because the facts of the two cases are so different. The court's holding in *Bazak* rested on its conclusion that the printed order form containing the signature lines and the "not a contract" phrase were "not relevant" in the context in which the transaction occurred. Thus, *Bazak,* while acknowledging the general rule, distinguished the case on its peculiar facts. In contrast to *Bazak,* GPL's order confirmation forms at issue in this case were used for the specific purpose for which they were designed.

■■■ We have reviewed the cases cited by the parties and others found during our research and we conclude, as did the Court of Appeals, that there is no single correct answer to the question of the effect of a "sign and return" clause.[7] Each writing must be examined independently and in the light of its own contents and context.

Finding little clear guidance in the text or context, including case law, of ORS 72.2010(2), we next consider legislative history to inform this court's inquiry into legislative

---

[7] *See, e.g., Transammonia Export Corp. v. Conserv. Inc.,* 554 F2d 719 (5th Cir 1977); *Busby, Inc. v. Smoky Valley Bean, Inc.,* 767 F Supp 235 (D Kan 1991); *Kline Iron & Steel Co. Inc. v. Gray Comm. Consultants, Inc.,* 715 F Supp 135 (D SC 1989); *Colorado-Kansas Grain Co. v. Reifschneider,* 817 P2d 637 (Colo App 1991); *Adams v. Petrade Intern. Inc.,* 754 SW2d 696 (Texas App 1988); *Nations Enterprises, Inc. v. Process Eqmt. Co.,* 40 Colo App 390, 579 P2d 655 (1978).

intent. *PGE*, 317 Or at 611-12. That inquiry, however, also provides little help. *See Security Bank*, 304 Or at 445 n 6 ("The Uniform Commercial Code was adopted in Oregon with little debate or discussion of the legislative intent."). Finally, we find no assistance in resort to general maxims of statutory construction to aid our inquiry. *PGE*, 317 Or at 612. We turn to the writings at issue in this case, *i.e.*, GPL's order confirmation forms.

L-P concedes that GPL's order confirmation forms contain all the elements necessary to confirm an order. L-P argues, however, that, because GPL's forms require L-P to sign the order confirmation form on the "order accepted by" line and to return that page, GPL has indicated its intention that the agreement would become final only after L-P signaled its approval of the quoted terms. L-P argues GPL's order confirmation forms evidence a mere offer that requires L-P to return a signed acceptance as a prerequisite to the formation of a contract. Considering GPL's writing in its entirety, however, we conclude that L-P's reading is not supported by the writings themselves. We make a case-specific determination that, notwithstanding the "sign and return" clause and the "order accepted by" signature line, GPL's order confirmation forms are sufficient to satisfy the merchant's exception.

GPL's forms are prominently labeled "ORDER CONFIRMATION." That labeling, standing alone, however, would not be dispositive unless the forms as a whole also demonstrate that they are what they are labeled.

GPL's order confirmation forms unambiguously identify the parties to the alleged oral contract and the prices and quantities of the goods being sold. Each form was signed by GPL and sent to L-P, which did not object within 10 days of receipt. GPL's forms would have been "sufficient" against GPL, the sender, if GPL had attempted to rescind the contract because, for example, the price of cedar shakes had gone up substantially. We are unpersuaded by L-P's argument that inclusion of the words "sign confirmation copy and return" on GPL's order confirmation forms indicate any intention on GPL's part that it was not bound until L-P signed and returned copies of the forms indicating its

approval. We do not read GPL's order confirmation forms to require L-P to signal its acceptance of the terms and conditions of the parties alleged oral agreement. Rather, we read the forms to be nothing more than a request for an acknowledgment of the receipt of GPL's forms. Thus read, GPL's "sign and return" clause and its "order accepted by" signature line were merely record keeping devices of GPL. We hold, therefore, that GPL's forms were sufficient to satisfy the merchant's exception of ORS 72.2010(2).

In summary, we conclude, as a matter of law, that GPL's order confirmation forms constitute "a writing in confirmation of the contract and sufficient against the sender" and, thus, that they satisfy the merchant's exception. ORS 72.2010(2). Accordingly, we hold that the trial court did not err in denying L-P's motions *in limine* and for a directed verdict on its affirmative defense of the UCC statute of frauds.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

**FADELEY, J.,** concurring.

I agree with the basis of analysis and the holding of the majority opinion.

I write separately to emphasize the following points.

The jury found that the buyer breached a sales contract and awarded damages to the seller. On the basis of the merchant's exception this court upholds the jury award against an attack that the case should never have been submitted to the jury for want of a writing to satisfy ORS 72.2010.

The merchant's exception, found in ORS 72.2010(2), differs from the formal requirements to satisfy the statute of frauds stated in ORS 72.2010(1) because, to be sufficient under that exception, the terms of a writing between merchants need only be sufficient to bind the *sender* of the writing, who is not necessarily the party against whom enforcement is being sought. James J. White and Robert S. Summers, 1 *Uniform Commercial Code*, § 2.5, 66, 68-69 (4th ed 1995). *See also,* Ingrid Michelsen Hillinger, *The Article 2 Merchant Rules: Karl Llewellyn's Attempt to Achieve The*

*Good, The True, The Beautiful in Commercial Law*, 73 Geo LJ 1141 (1985) (explaining that the distinction between merchants and nonmerchants is an intentional one that creates a classification on which the UCC bases different rules and different results).

Because the written "Order Confirmation" evidenced a contract, stated the quantity involved, and was signed by and bound the sender, it satisfied the merchant's exception to the statute of frauds, as stated in ORS 72.2010(2). *See, e.g., Fort Hill Lumber v. Georgia-Pacific*, 261 Or 431, 436, 493 P2d 1366 (1972) (holding that buyer's letter, signed only by buyer, was sufficient to satisfy ORS 72.2010(2) where defendant, seller, argued that the letter contained indefinite and inconsistent terms). Cases in accord are collected in White and Summers, above; *see* R.A. Hillman, *Common Law and Equity Under the Uniform Commerical Code*, ¶ 3.02[2], 3-4, 3-5 (1985) (quoting the drafter of the code concerning dealings between merchants).[1] The verdict and judgment thereon in this case must stand.

Moreover, the preprinted line on seller-sender's form, "sign confirmation copy and return," does not state that doing so is a condition of the sender being bound. In transactions between merchants, care must be taken not to defeat the purpose of ORS 72.2010(2). It would defeat that purpose if a court imposes some sort of presumption that providing a signature line for acceptance, or requesting an acknowledgment signature of buyer, serves to make the sale conditional on that signature or means that the sender is not bound, absent a clear statement in the document that the transaction is conditional. Neither uniformity nor stability of transactions will be forwarded by case-by-case decision making.

---

[1] ORS 72.1040 defines "merchant" and "between merchants." No one contends in this case that either party is not a merchant.

The official commentary to UCC § 2-201 states:

"Only three definite and invariable requirements as to the memorandum are made by this subsection. *First*, it must evidence a contract for the sale of goods; *second*, it must be 'signed', a word which includes any authentication which identifies the party to be charged [*i.e.*, the sender]; and *third*, it must specify a quantity." (Emphasis added.)

**GRABER, J.,** dissenting.

I dissent. In my view, the writing in this case does not satisfy the "merchant's exception" to the statute of frauds in the Uniform Commercial Code.

ORS 72.2010 provides in part:

"(1)  Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by the authorized agent or broker of the party. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this subsection beyond the quantity of goods shown in such writing.

"(2)  Between merchants, if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) of this section against such party unless written notice of objection to its contents is given within 10 days after it is received."

ORS 72.2010(2), the merchant's exception, applies if, but only if, all its elements are met. If that exception applies, GPL would prevail. If the merchant's exception does not apply, then ORS 72.2010(1) does, and L-P would prevail.

It is undisputed in this case that the parties are merchants, that the document in question was received within a reasonable time, that the recipient had reason to know the contents of the document, and that the recipient did not give notice of objection within 10 days after receipt. That being so, the dispositive question is whether the writing that GPL sent to L-P constituted "a writing in confirmation of the contract" or, instead, constituted something less, such as an offer.

Both the majority and the concurrence focus on the nature of the merchant's exception, its difference from the usual statute of frauds, and the requirement that the writing be sufficient against the sender. 323 Or at 122-23 (Van Hoomissen, J.); 323 Or at 128-30 (Fadeley, J., concurring).

That discussion is beside the point. The disputed issue is whether the writing here is "in confirmation of the contract" and thus whether the merchant's exception, ORS 72.2010(2), applies at all. An analysis of the document at issue leads me to conclude that the merchant's exception was not satisfied, because that document was not "a writing in confirmation of the contract." ORS 72.2010(2).

The first page of the document is labeled "ORDER CONFIRMATION." At the bottom of the page, the following material appears (after several other lines of text) below a general heading of "CONDITIONS OF SALES": "SIGN CONFIRMATION COPY AND RETURN." The second page of the document, also labeled "ORDER CONFIRMATION," has different wording at the bottom. The second page contains this at the bottom left:

"ORDER ACCEPTED BY:_____
                                FIRM NAME

"SIGNATURE & TITLE                    DATE"

The majority holds that the foregoing document does not require the recipient to sign the confirmation copy and return it. The majority reasons: "we read the forms to be nothing more than a request for an acknowledgment of the receipt of GPL's forms." 323 Or at 128.

The majority's reasoning is flawed for four reasons. First, under the majority's reading of the document, the key word "ORDER" is deemed to mean two different things on the same page of the same document written by the same person. In the phrase "ORDER CONFIRMATION," the majority construes the word "ORDER" to refer to *the substantive terms of the agreement to order goods*. If it were otherwise, the majority could not hold that the document is sufficient to constitute "a writing in confirmation of the contract." ORS 72.2010(2). Yet, in the phrase, "ORDER ACCEPTED BY," the majority construes the word "ORDER" to refer only to *GPL's invoice*. Logic and common sense demand that the same word on the same page of the same document written by the same person mean the same thing. *Cf. PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) ("use of the same

term throughout a statute indicates that the term has the same meaning throughout the statute"). In this case, the context demonstrates that "ORDER" in each instance refers to the substantive terms of the agreement to order goods.

Second, the majority drains all the blood from the word "ACCEPTED." In the context of a commercial document of this kind and of the UCC, the word "accepted" is most likely to refer either to "acceptance" of an offer so as to form a contract or to "acceptance" of goods. *See Hogan v. Alum. Lock Shingle Corp.*, 214 Or 218, 226, 329 P2d 271 (1958) ("[i]t is hornbook law that the existence of a contract is grounded on offer and acceptance and there is no agreement until the offer has been accepted in accordance with its very terms"); ORS 72.1030(2)(a), 72.6060 (defining "acceptance of goods" for purposes of Article 2 of the UCC). Moreover, even in common parlance, to "accept" means to "assent to the receipt of," "to make an affirmative or favorable response to," or "to assume * * * an obligation to pay." *Webster's Third New Int'l Dictionary*, 10-11 (unabridged ed 1993). That definition requires an affirmative act, and it also implies that the option of *rejection*, its antonym, is available as an alternative response to the thing as to which acceptance is being sought. The words "ACCEPTED BY" imply that the recipient must act further before an order (contract) comes into existence, whether those words are given their ordinary meaning or a more specialized meaning. The drafter of the document at issue chose the active "ACCEPTED BY," not the passive "RECEIVED BY" or "ACKNOWLEDGED BY" that would be consistent with a confirmation. Yet, the majority reads "ACCEPTED" to mean nothing more than "a request for an acknowledgment of * * * receipt."

In addition to giving inconsistent meanings to "ORDER" and no effect to "ACCEPTED," the majority's opinion gives no weight to the nature and location of the phrase "SIGN CONFIRMATION COPY AND RETURN." The flatly worded directive—"SIGN CONFIRMATION COPY AND RETURN"— is mandatory. Additionally, the fact that that phrase appears below the heading "CONDITIONS OF SALES" suggests that the requirement to sign and return the

copy was a condition that had to be satisfied before an order (contract) came into existence.

As the court stated in *Great Western Sugar Co. v. Lone Star Donut Co.*, 567 F Supp 340, 342 (ND Tex 1983), *aff'd* 721 F2d 510 (5th Cir 1983), "[a] true confirmation requires no response." Here, as in *Great Western Sugar Co.*, the document required the prospective buyer to sign and return a copy, thus reducing the document to the status of an offer that would take effect if and when it was "ACCEPTED BY" a representative of the buyer.

Other decisions are to similar effect. *See, e.g., Adams v. Petrade Intern., Inc.*, 754 SW2d 696, 706-07 (Ct App Texas 1988) (a writing did not satisfy merchant's exception even though it used the word "confirmation," because the writing required the recipient to sign and return a copy and had the word "ACCEPTED" followed by a blank signature line); *Kline Iron & Steel v. Gray Com. Consultants, Inc.* 715 F Supp 135, 141-43 (CD SC 1989) (a writing did not satisfy the merchant's exception when its printed "terms and conditions" were "for immediate acceptance" and when the form provided a line labeled "ACCEPTED" for the buyer to sign and date). Although none of the reported cases from other jurisdictions is exactly like this one, the theme of those cases is consistent: if the recipient is required to sign and return a copy for the purported "confirmation" to be "ACCEPTED," then the merchant's exception is not satisfied. The majority's departure from that theme frustrates the legislature's directive to strive for uniformity among the jurisdictions that have adopted the UCC. *See* ORS 71.1020(2)(c) (stating that an "[u]nderlying purpose[ ] and polic[y] of" the UCC is "[t]o make uniform the law among the various jurisdictions").

The majority's fourth error is its failure to give effect generally to the "CONDITIONS OF SALES." Those conditions were not asserted to have been part of the alleged oral contract. Therefore, their presence as new material terms (even if other terms remained unchanged from earlier negotiations) made this document a new offer.

In summary, because the document at issue required a response, it did not constitute "a writing in confirmation" of a prior oral agreement as required by ORS 72.2010(2). The document thus did not satisfy the merchant's exception to the UCC's statute of frauds, ORS 72.2010(1).[1] Accordingly, the trial court erred in failing to grant L-P's motion for a directed verdict on its affirmative defense of the statute of frauds. I respectfully dissent from the majority's contrary holding.

Carson, C. J., and Gillette, J., join in this dissenting opinion.

---

[1] The concurring opinion discusses the nature of the merchant's exception and its differences from the usual statute of frauds. That discussion is beside the point. The disputed issue is *whether* the merchant's exception applies at all, an issue that the concurrence does not address.